J7FTKID1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                           18 CR 872 (VM)

5   LLOYD KIDD,

6               Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        July 15, 2019
9                                       9:15 a.m.

10

    Before:
11
                        HON. VICTOR MARRERO,
12
                                        District Judge
13

14                        APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    MOLLIE BRACEWELL
17  ELINOR TARLOW
    JACOB GUTWILLIG
18  SAGAR RAVI
         Assistant United States Attorneys
19
    ZACHARY MARGULIS-OHNUMA
20  VICTORIA MEDLEY
         Attorneys for Defendant
21
    ALSO PRESENT:  USAO Paralegal Specialist Hannah Harney
22  Defense Paralegal Specialist Sophia Lattanzio
    Special Agent Brian G. Gander, FBI
23

24

25

J7FTKID1

1          (In open court, jury not present)

2          THE COURT:  Welcome back.  We have two items to

3    resolve.  One is the request by the members of the jury for the

4    testimony of Kaira Brown.  I understanding the parties have

5    agreed upon the redacted version of that, and we will hand to

6    the court security officer two copies of that portion of the

7    instructions to be turned over to the jury according to their

8    request.

9          The second is Court Exhibit Number 4, the question

10   that the jurors raised concerning the instruction on page 34,

11   which relates to the requirement about acting knowingly.  Their

12   question is:  Is this requirement limited solely to a finding

13   of advertising, or would it apply for any finding under the

14   first alternative of the first element of Count One, and they

15   say, for example, recruited, enticed, et cetera?

16         Have the parties discussed this question and

17   endeavored to develop a proposed instruction to answer the

18   question?

19         MS. BRACEWELL:  Yes, your Honor, the parties conferred

20   and we have a jointly-agreeable proposal.  We emailed it to

21   your clerk this morning and I could read it into the record.

22         THE COURT:  Please read it into the record.

23         MS. BRACEWELL:  In response to your question regarding

24   Count One, if the only prohibited activity that you find the

25   defendant engaged in is advertising a minor for sexual

J7FTKID1

activity, you must find the defendant actually knew that the

victim was under 18 years of age.  If, however, instead of or

in addition to advertising you find beyond a reasonable doubt

that the defendant recruited, enticed, harbored, transported,

provided, obtained, maintained, patronized or solicited the

victim, then you must find that the defendant did so, either

(1) knowing that the victim was under the age of 18, (2) in

reckless disregard of the fact that the victim was under the

age of 18, or (3) having had a reasonable opportunity to

observe the victim who was under the age of 18 at the time of

the alleged conduct.

          THE COURT:  Thank you.  Mr. Margulis-Ohnuma, would you

confirm that that explanation is acceptable to the defendant?

          MR. MARGULIS-OHNUMA:  Yes, your Honor, that's

consistent with our understanding of the law on this point.

          THE COURT:  Thank you.  Ms. Bracewell, would you

forward another copy of that agreement or proposal to chambers,

at Alina Lindblom's email so we could have it here?

          MS. BRACEWELL:  Yes, I will right now.

          (Pause)

          THE COURT:  I am informed that the jury is here.

          I have read the parties proposed response to the

jury's question, Court Exhibit Number 4, and I find it

acceptable, so I will read it to them and then give them a

clean copy along with the two copies of the testimony of Kaira

J7FTKID1

1    Brown.

2              (Jury present)

3              THE COURT:  Good morning, welcome back.  I hope that

4    you all had a restful weekend, not inconvenienced or

5    interrupted by the blackout.

6              So let's turn to the two items that we left open as of

7    last Friday.  You asked for copies of Kaira Brown's testimony.

8    We have obtained copies and redacted those portions that are

9    not relevant or that contain material that is beyond the scope

10   of the testimony or matters that I asked be stricken, et

11   cetera.  When you go back to the jury room now, the security

12   officer will give you copies of the testimony.

13             Second, you asked another question concerning the

14   definition of acting knowingly.  In response to that question,

15   which pertains to Count One, if the only prohibited activity

16   that you find the defendant engaged in is advertising a minor

17   for sexual activity, you must find that the defendant actually

18   knew that the victim was under 18 years of age.  If, however,

19   instead of or in addition to advertising, you find beyond a

20   reasonable doubt that the defendant recruited, enticed,

21   harbored, transported, provided, obtained, maintained,

22   patronized, or solicited the victim, then you must find that

23   the defendant did so either knowing that the victim was under

24   the age of 18, or in reckless disregard of the fact that the

25   victim was under the age of 18, or having had a reasonable

J7FTKID1

1    opportunity to observe the victim who was under the age of 18

2    at the time of the alleged conduct.

3           I will also give the court security officer a copy of

4    this response so that you have it before you during your

5    deliberations.

6           Thank you again, and you may now return to the jury

7    room.

8           (Jury retired to deliberate; time noted, 9:52 a.m.)

9           (Recess taken)

10          (Time noted, 12:50 p.m.)

11          THE COURT:  The Court was handed a note from the jury

12   dated July 15, no time given.  This is Court Exhibit Number 5,

13   and it reads:  Can the Court provide further instruction on

14   what constitutes "a reasonable opportunity to observe" a victim

15   and how that element can be established?

16          Now I have been just handed a second note just now

17   which will be marked Exhibit Number 6, Court Exhibit 6, which

18   reads:  Can we take a "get-some-air break" for 30 minutes?

19          Is there any objection from any of the parties that

20   the jury take a 30-minute break?

21          MS. TARLOW:  Not from the government.

22          MR. MARGULIS-OHNUMA:  Not from the defense.

23          THE COURT:  All right.  Why don't I call them in and

24   say there's no objection to taking a 30-minute take-some-air

25   break, but to caution them not to have any deliberations in the

J7FTKID1

1    meantime, and then we can discuss the answer to the question.

2         Bring the jury in, please.

3         (Jury present)

4         THE COURT:  The Court received your note earlier today

5    in which you asked:  Can the Court provide further instruction

6    on what constitutes "a reasonable opportunity to observe" a

7    victim, and how that element can be established?

8         We are working on a response and will need a little

9    bit more time to do so.  In the meantime, I have also been

10   given your more recent note asking whether you can take a

11   "get-some-air break" for 30 minutes.  The answer to the latter

12   is yes, and I hasten to say it was unanimous.

13        JUROR:  As was the request.

14        THE COURT:  So just want to caution you that when you

15   do take such a break, please remember the caution that I have

16   given, do not have any form of deliberation among yourselves or

17   with anyone at the outside or have any contact with anyone

18   involved in the case, and if any of these things occur, please

19   inform me immediately.

20        Thank you, and have a good break.

21        (Jury not present)

22        THE COURT:  I have distributed the earlier note, and

23   asked the parties to examine the question and confer to see

24   whether you can develop a jointly-agreed upon response that the

25   Court could consider and determine whether such a response

J7FTKID1

accurately reflects the law or the relevant considerations.

Does the government have any view on the matter?

MS. TARLOW:  Yes, your Honor, we have a proposed response.  It's our understanding defense counsel does not agree with the proposed response, but I could read it, if your Honor would like, and explain why this is our proposed response.

THE COURT:  All right, you may.

MS. TARLOW:  With respect to your consideration of whether the defendant had a "reasonable opportunity to observe the victim," I instruct you to use the ordinary everyday definition of these terms.  An opportunity to observe includes but is not limited to a face-to-face interaction.

THE COURT:  Okay.  Thank you.

Mr. Margulis-Ohnuma, what's your response?

MR. MARGULIS-OHNUMA:  I haven't written something out, but our proposal would be something to the effect of a reasonable opportunity to observe is an opportunity sufficient for the observer -- for a reasonable observer to ascertain the age of the person observed.

And if I may, I will give you my rationale for why I think it should be a restrictive definition like that, because we are obviously quite far apart on this.

For one, there's no case law on this.  The parties have looked pretty efficiently, and there's no case that

J7FTKID1

1    defines what is a reasonable opportunity to observe.  My

2    submission would be, given the historical statutory and

3    constitutional background, given that we're writing on a blank

4    slate, that the analysis should be or the definition of a

5    reasonable opportunity to observe should be quite narrow.

6           And here's why:  Number one, there is always a

7    presumption in criminal cases that every prong, every element

8    must carry a mens rea requirement, usually knowing or willful.

9    So what this statute does is creates a very explicit carve out

10   from the normal presumption of a mens rea with respect to

11   knowledge of the victim's age.  So right there it should be

12   interpreted narrowly.

13          Number two, this statute carries a life imprisonment,

14   as the maximum sentence.  So given that, the carve out of the

15   normal presumption of mens rea should be even more narrow.

16          And where I'm getting this from is that the

17   government's cited a case, *U.S. v. Robinson*, I could provide

18   your clerk with the number, but which discusses the approach

19   that we all do agree on, that this is a carve out to the mens

20   rea requirement in the sense that if they prove a reasonable

21   opportunity to observe, they don't have to prove actual

22   knowledge or even reckless disregard for the actual age of the

23   alleged victim.  So the *Robinson* case sets forth that framework

24   without defining what is a reasonable opportunity to observe,

25   but in so doing cites the congressional record and the

J7FTKID1

testimony of the sponsors of the bill.  And if I may, and I

will read, which I think is pretty illustrative.

So in passing this provision, the reasonable

opportunity to observe provision, in 2008, the sponsors of the

bill submitted in the congressional record that:  Additionally,

a special evidentiary provision is added for those cases under

Section 1599(a)(1) in which criminal liability attaches not

because of the use of coercion but because of the use of a

minor for commercial sexual activity.  In such cases, the

prosecution will be exempted from having to prove beyond a

reasonable doubt that a defendant who had a reasonable

opportunity to observe the person recruited, enticed, harbored,

transported, provided, obtained or maintained, knew that the

person had not attained the age of 18.  This special

evidentiary provision reflects a similar provision in the

aggravated sexual abuse offense, 18 US Code 2241(d), and is

crafted in light of United States v. Excitement Video, 513 U.S.

64, 70, n. 2 (1994) (exception from presumption of mens rea

more appropriate in statutes in which a perpetrator necessarily

"confronts the underage victim personally and may reasonably be

required to ascertain that victim's age.")  This approach

comports with numerous appellate decisions in related areas of

the law such as the Mann Act.  And as an example, it cites

United States v. Jones, 471 F.3d 535 (4th Circuit, 2006).

So what they're saying is that given that this is an

J7FTKID1

exception to the normal rule requiring a mens rea with respect

to every element of a criminal offense, and I'm adding given

that there is a life imprisonment provision, it's a narrow

exception, and therefore, the jury should be instructed

narrowly that "reasonable opportunity" means an opportunity

reasonable with respect to what you're trying to ascertain.

What you're trying to ascertain is the victim's age, and they

should be instructed accordingly.

THE COURT:  Ms. Tarlow?

MS. TARLOW:  Your Honor, we think that applies to two

different ways in which this element can proven.  In

*Robinson* -- and the cite is 702 F.3d 22, (2d Cir. 2012), in

*Robinson* the defendant argued that the district court had erred

by instructing the jury that the defendant could be convicted

upon a showing that he had a reasonable opportunity to observe

the victim.

In that case, the instruction included that there was

a face-to-face interaction and that was sufficient.  At page 31

of that opinion the court specifically states that the

government may prove that a defendant had a reasonable

opportunity to view a victim in lieu of proving knowledge.  It

is strict liability, as is the case in many other statutes with

respect to minor victims.  And the Second Circuit noted that

this is an alternative way to proving mens rea with regard to a

defendant's awareness of a victim's age.

J7FTKID1

1        Otherwise, to interpret it the way that the defense

2   counsel has, would, as I said, allay the two different ways in

3   which this element can be met, and it would take out the

4   opportunity to view as not a separate strict liability with

5   respect to a minor's age.

6        So your Honor, just looking at one case, *United States*

7   *v. Robinson*, which is a Second Circuit case, it very clearly

8   delineates that there are three different ways to prove this

9   element, one of which is a strict liability manner where the

10  defendant must just have a face-to-face interaction and does

11  not need to have specific mens rea or awareness of the victim's

12  age.

13        THE COURT:  Thank you.

14        MR. MARGULIS-OHNUMA:  May I briefly respond?

15        THE COURT:  Yes.

16        MR. MARGULIS-OHNUMA:  It's not any face-to-face

17  interaction, it's a reasonable opportunity to view.  So what

18  else does "reasonable" mean if not reasonable enough to

19  determine the question of how old the person is?  So a fleeting

20  view wouldn't be enough, it has to be enough to determine how

21  old the person is.  That's the key.

22        The idea is if you're a sex trafficker and you see a

23  girl you can't say:  Well, I didn't know, even though she

24  looked like she was 14, well, I didn't know.

25        Well, if you had a reasonable opportunity to view,

J7FTKID1

1    then it doesn't matter whether you knew or not.  But if you

2    didn't have an opportunity to view, if you met her online and

3    saw a video that she made where she looks older and it's not

4    enough to ascertain her age, that's not a reasonable

5    opportunity to view.  And the case law is silent to that, but I

6    think, given the rule of lenity, given the stakes here of life

7    imprisonment, we need to fill it in as narrow a way as

8    possible.

9              MS. TARLOW:  Your Honor, that is why the government

10   proposed the term "face-to-face interaction."  We're not

11   suggesting that meeting someone online, as defense counsel

12   said, would be sufficient to satisfy that requirement.

13             THE COURT:  Let me consider what you've just argued.

14   Let me read the *Robinson* case closely, and we'll reconvene in a

15   reasonable period of time.  I'll see you in perhaps another

16   half hour and we'll go from there.  Thank you.

17             MS. TARLOW:  Thank you, your Honor.

18             (Recess taken)

19             (Time noted, 2:40)

20             THE COURT:  I had an opportunity to examine closely

21   the parties' debate earlier concerning the meaning of the term

22   "reasonable opportunity to observe," and also I read very

23   carefully the Second Circuit's decision in the *Robinson* case as

24   well as the legislative history set forth in the congressional

25   record dealing with the amendments to Section 1591(a)(1), which

J7FTKID1

1   added the 1591(c), which is the statute that contains this

2   language referring to reasonable opportunity to observe.

3        Let me just quote a couple of provisions from *Robinson*

4   that I think inform the Court's examination of the issues.

5   One, on page 31, the court says the better reading of Section

6   1591(c) is the government may prove the defendant had a

7   reasonable opportunity to view the victim in lieu of proving

8   knowledge.

9        Page 32, it continues:  Viewed in context, the most

10  natural reading of this provision is that proof that the

11  defendant had a reasonable opportunity to observe the victim

12  may substitute for proof that the defendant knew the victim's

13  underage status.

14       And on page 34, at the conclusion of the discussion of

15  the section, the court summarizes by saying:  In a prosecution

16  under Section 1591, the government may satisfy its burden of

17  proof with respect to the defendant's awareness of the victim's

18  age by proving any of the following beyond a reasonable doubt:

19  (1) the defendant knew that the victim was under age 18, (2)

20  the defendant recklessly disregarded the fact that the victim

21  was under 18, or, (3) the victim had a reasonable opportunity

22  to observe the victim.

23       Now in this case, as I interpret the circuit court's

24  opinion, it expressed concern that the defendant's argument

25  there essentially would have superimposed an additional element

J7FTKID1

1    to the mens rea requirement under Section 1591(a), whereas

2    Section 1591(c) states, where the government need not prove the

3    effect of the defendant's interpretation would have been to

4    remove or to undermine the strict liability aspect of the

5    statute.

6          And that's the way that I see the debate here as

7    between the government's proposal and the defendant's response.

8    What Mr. Margulis-Ohnuma proposes is that the Court in essence

9    consider two levels of analysis of reasonableness.  One is the

10   reasonable opportunity to observe, but it's also the

11   reasonableness of the observer, and the extent to which the

12   observer properly may or may not have been able to assess the

13   victim's age.

14         I think that adding this element of analysis into the

15   observer's reasonableness is in effect doing what the *Robinson*

16   court indicated was not appropriate, which is to add an

17   additional element to the mens rea requirement, and in effect

18   remove the strict liability aspect of the statute.  In that

19   light, I would propose reading the instruction proposed by the

20   government with a couple of possible observations, and I invite

21   your reaction to that.

22         The government suggested that the term is defined in

23   its ordinary everyday meaning and includes but is not limited

24   to a face-to-face interaction.  I would suggest that one

25   possibility of elaborating a little bit more on that is to make

J7FTKID1

1    clear that it includes but is not limit to, and insert "for

2    example," so it is not an element but an example of what might

3    possibly satisfy the requirement, for example, face-to-face

4    interaction, the means, duration and location of such

5    interaction.  That would make it clear that if there is a

6    face-to-face or personal interaction, it would be important to

7    assess how long that interaction occurred, where it occurred,

8    the means by which it occurred, and I think that that would

9    perhaps add a little bit more clarity for the jury in

10   determining the question of what is a reasonable opportunity.

11          Now I could just read what I have just indicated or I

12   could also give the jury more context by reading from the

13   paragraphs in the Second Circuit opinion that I read to you

14   before.  I invite your thoughts on that.

15          MR. MARGULIS-OHNUMA:  Sorry, could you read the full

16   instruction you're proposing?  I'm not sure I follow.

17          THE COURT:  There are two possibilities.  One is for

18   me to read the Second Circuit language that I gave you as

19   context and then read the instruction of the government's

20   version, which would say the term is defined by its ordinary

21   everyday meaning and includes but is not limited to, for

22   example, face-to-face interaction, the means, duration and

23   location of such interaction, or maybe we say:  And the means

24   duration and location of such interaction.

25          Government?

J7FTKID1

1          MS. TARLOW:  One moment, your Honor.

2          THE COURT:  Yes.

3          (Pause)

4          MS. TARLOW:  Your Honor, two points.  First, we think

5    that providing portions of the Second Circuit case law in

6    *United States v. Robinson* would provide a context for the

7    instruction your Honor would give, and so we would ask that

8    your Honor provide a description or excerpt from *United States*

9    *v. Robinson* to place into context.

10         With respect to the additional language that your

11   Honor has suggested, our only concern is that the way that it

12   is currently phrased is it lists an example, a face-to-face

13   interaction, and then describes certain qualities or

14   characteristics or factors that the jury might consider about

15   that face-to-face interaction, as opposed to providing

16   additional examples.  So your Honor, we would have proposed

17   language that might slightly tweak that to reflect that

18   concern.

19         THE COURT:  Right.

20         MS. TARLOW:  Instead it would read -- the first

21   sentence would remain the same, the second sentence would say:

22   You may consider the means, duration, and location of certain

23   face-to-face interactions.

24         Your Honor, strike that.  The second sentence would

25   instead say:  You may consider the means, duration and location

J7FTKID1

1   in considering whether the defendant had a reasonable

2   opportunity to view a victim.  An opportunity to observe a

3   victim includes but is not limited to a face-to-face

4   interaction.

5           THE COURT:  Thank you.

6           Mr. Margulis-Ohnuma?

7           MR. MARGULIS-OHNUMA:  I guess I'm not persuaded that a

8   face-to-face interaction isn't required.  I thought the

9   government had come off of that.  The implication of that

10  instruction is that there doesn't have to be a physical

11  face-to-face interaction.  I don't think that's right.

12          In terms of adding the means, duration and location

13  language, I think that's helpful.

14          THE COURT:  All right.  Well, remember what I said

15  earlier that I don't read this face-to-face interaction as

16  being an element but an example, and that's why I qualified it

17  by saying limited to, for example, a face-to-face interaction.

18          So I would not -- I am not persuaded,

19  Mr. Margulis-Ohnuma, that your objection in this case warrants

20  acceptance of your language.

21          Would the government hand up the proposal that you

22  just read?

23          MS. TARLOW:  Yes, your Honor.

24          MR. MARGULIS-OHNUMA:  And also identify what language

25  from *Robinson* is proposed to be read?

J7FTKID1

1          THE COURT:  Page 31, the bottom paragraph of the

2     second column, the language says:  *Robinson*'s interpretation is

3     mistaken.  The text and structure of the statute does not

4     indicate that Section 1591(c) imposes an additional element on

5     top of the mens rea requirement in Section 1591(a).  Quite the

6     contrary, 1591(c) states what the government need not prove.

7          It continues, next paragraph:  The better reading of

8     section 1591(c) is that the government may prove that the

9     defendant had a reasonable opportunity to view the victim in

10     lieu of proving knowledge.

11          Continuing on the next page:  Viewed in context, the

12     most natural reading of this provision is that proof that the

13     defendant had a reasonable opportunity to observe the victim

14     may substitute for proof that the defendant knew the victim's

15     underage status.

16          And then finally, on page 34, last paragraph above B,

17     the government may satisfy its burden of proof with respect to

18     the defendant's awareness of the victim's age by proving any of

19     the following beyond a reasonable doubt:  (1) the defendant

20     knew the victim was under 18, (2) the defendant recklessly

21     disregarded the fact that the victim was under 18, or (3) the

22     defendant had a reasonable opportunity to observe the victim.

23          MR. MARGULIS-OHNUMA:  I would object to reading any of

24     that, your Honor.  It's not responsive to the question.  The

25     initial part is rather confusing for non-lawyers.

J7FTKID1

1        I think they focused in on the question and understand

2   that's a prong, they just want to know the content of it, what

3   constitutes a reasonable opportunity to observe.  So I would

4   object to anything going beyond that, which I think is captured

5   in the other language but not in the language from *Robinson*.

6        THE COURT:  Thank you.

7        Ms. Tarlow, any view on that?

8        MS. TARLOW:  Your Honor, we defer to the Court as to

9   whether or not it would be appropriate.

10        THE COURT:  Do you have the language?

11        MS. TARLOW:  Yes, your Honor.

12        THE COURT:  Mr. Margulis, you heard the government's

13   proposal.

14        MR. MARGULIS-OHNUMA:  To be safe, let's read the whole

15   thing one more time.

16        THE COURT:  With respect to your consideration of

17   whether the defendant had a reasonable opportunity to observe a

18   victim, I instruct you to use the ordinary everyday definition

19   of those terms.  You may consider the means, duration, and

20   location as factors in determining whether the defendant had a

21   reasonable opportunity to observe the victim.  An opportunity

22   to observe the victim includes but is not limited to, for

23   example, a face-to-face interaction between the defendant and

24   the victim.

25        MR. MARGULIS-OHNUMA:  So I think that's clear enough.

J7FTKID1

1    I maintain the same objection, that I think it should not

2    include the phrase "but not limited to."  I think the language

3    does require a face-to-face or in person interaction, but other

4    than that, I don't object.

5         THE COURT:  I don't see anything in the statute that

6    supports an argument that it requires a face-to-face

7    interaction.  In light of the fact there's no consensus as to

8    whether the Court should give the context from *Robinson* as

9    background, I will not include that language in the

10   instruction, but I pointed it out just to indicate to you what

11   I considered persuasive in determining what an appropriate

12   instruction here would be.

13        MS. TARLOW:  Your Honor, just with respect to the

14   final sentence that is proposed to be read to the jury, we

15   would ask that your Honor include -- and I apologize if I did

16   not include it -- a reasonable opportunity, as opposed to just

17   an opportunity.

18        THE COURT:  All right.  The court officer, please

19   bring the jury in.

20        (Jury present)

21        THE COURT:  Apologies for keeping you waiting.  In

22   this business when you're dealing with statutes and statutory

23   interpretation, questions, even the simplest ones, such as

24   those you raise, sometimes require the parties to do research,

25   consult, discuss with the Court so the Court can do its own

J7FTKID1

1    form of research, drafting, consultation with oracles and other

2    means to arrive at an appropriate answer to your question.

3            So in that light, let me give you a response to your

4    question with respect to your consideration of whether the

5    defendant had a "reasonable opportunity to observe" a victim.

6    I instruct you to use the ordinary everyday definitions of

7    those terms.  You may consider the means, duration, and

8    location as factors in determining whether the defendant had a

9    "reasonable opportunity to observe" the victim.  A reasonable

10   opportunity to observe the victim includes, but is not limited

11   to, for example, a face-to-face interaction between the

12   defendant and the victim.

13           I hope that that is sufficiently helpful, and I now

14   direct you to return to your deliberations.  And when you have

15   an idea of your adjournment for the day, if you're going to be

16   adjourning for the day and continue tomorrow, let us know as

17   soon as possible.  Thank you.

18           (Recess taken)

19           (Time noted, 3:30)

20           (Jury not present)

21           THE COURT:  The Court received a note dated July 15,

22   2019, at 3:00 p.m. from the jury marked as Court Exhibit

23   Number 7, and it reads:  We are ready to deliver our verdict.

24           The court security officer, please escort the jury

25   into the jury box.

J7FTKID1

1          (Jury present)

2          THE COURT:  The jury has submitted to the Court,

3   through the court security officer, a note which will be marked

4   as Court Exhibit Number 7, stating that the jury is ready to

5   deliver its verdict.

6          The Court notes for the record that the twelve regular

7   members of the jury impaneled in this action have been returned

8   to the courtroom and are seated in the jury box in their

9   respective places.

10          The foreperson, please rise.

11          Has the jury unanimously agreed upon a verdict?

12          THE FOREPERSON:  Yes, we have.

13          THE COURT:  Please hand the verdict to the clerk.

14          Ladies and gentlemen of the jury, your verdict will

15   now be published, that is, it will be read out loud in open

16   court.  Pay close attention when the verdict is published.  You

17   may be asked individually whether the verdict as published

18   constitutes your individual verdict in all respects.

19          The clerk will publish the verdict.

20          LAW CLERK:  Count One, sex trafficking of a minor

21   victim.

22          Ms. Foreperson, considering the elements of the crime

23   of sex trafficking, as such elements are described in the

24   Court's instructions, do you unanimously find that the

25   government has proved beyond a reasonable doubt that the

J7FTKID1

defendant, Lloyd Kidd, is guilty of committing this crime as

charged in Count One of the indictment, knowing or in reckless

disregard of the fact that Victim-1, Kaira Brown, had not

attained the age of 18 years, or that the defendant had a

reasonable opportunity to observe Kaira Brown and Kaira Brown

was under 18 at the time?

THE FOREPERSON:  Yes.

LAW CLERK:  So say you all.

Ms. Foreperson, considering the elements of the crime

of sex trafficking, as such elements are described in the

Court's instructions, do you unanimously find that the

government has proved beyond a reasonable doubt that the

defendant, Lloyd Kidd, is guilty of committing this crime as

charged in Count One of the indictment, knowing or in reckless

disregard of the fact that force, threats of force, fraud,

coercion, or a combination of such means would be used to cause

Victim-1, Kaira Brown, to engage in a commercial sex act?

THE FOREPERSON:  No.

LAW CLERK:  So say you all.

Count Two, sex trafficking of a minor victim.

Ms. Foreperson, considering the elements of the crime

of sex trafficking, as such elements are described in the

Court's instructions, do you unanimously find that the

government has proved beyond a reasonable doubt that the

defendant, Lloyd Kidd, is guilty of committing this crime as

J7FTKID1

1   charged in Count Two of the indictment?

2          THE FOREPERSON:  No.

3          LAW CLERK:  So say you all.

4          Count Three, sex trafficking of an adult victim.

5          Ms. Foreperson, considering the elements of the crime

6   of sex trafficking, as such elements are described in the

7   Court's instructions, do you unanimously find that the

8   government has proved beyond a reasonable doubt that the

9   defendant, Lloyd Kidd, is guilty of committing this crime as

10  charged in Count Three of the indictment?

11         THE FOREPERSON:  No.

12         LAW CLERK:  So say you all.

13         Count Four, sex trafficking of a minor victim.

14         Ms. Foreperson, considering the elements of the crime

15  of sex trafficking, as such elements are described in the

16  Court's instructions, do you unanimously find that the

17  government has proved beyond a reasonable doubt --

18         MR. MARGULIS-OHNUMA:  Your Honor, I apologize the

19  clerk I think misread Count Four.

20         LAW CLERK:  My apologies.

21         THE COURT:  Why don't you pick up the verdict form

22  from the jury foreperson and read the count as it appears.

23         LAW CLERK:  Count Four, sex trafficking of an adult

24  victim.

25         Considering the elements of the crime of sex

J7FTKID1

1    trafficking, as such elements are described in the Court's

2    instructions, do you unanimously find that the government has

3    proved beyond a reasonable doubt that the defendant, Lloyd

4    Kidd, is guilty of committing this crime as charged in Count

5    Four of the indictment?

6              THE FOREPERSON:  No.

7              LAW CLERK:  So say you all.

8              Count Five, production of child pornography.

9              Ms. Foreperson, considering the elements of the crime

10   of using a minor to produce child pornography, as such elements

11   are described in the Court's instructions, do you unanimously

12   find that the government has proved beyond a reasonable doubt

13   that the defendant, Lloyd Kidd, is guilty of committing this

14   crime as charged in Count Five of the indictment?

15             THE FOREPERSON:  Yes.

16             LAW CLERK:  So say you all.

17             THE COURT:  Does either party request that the jury be

18   polled?

19             MR. MARGULIS-OHNUMA:  Yes, your Honor, we do request

20   that.

21             THE COURT:  All right.  The clerk will pick up the

22   verdict form and poll the jury.

23             LAW CLERK:  When I call your name, please indicate

24   whether the verdict as published constitutes your individual

25   verdict.  You may answer yes or no.

J7FTKID1

1            One, Susan Herzog.

2            THE FOREPERSON:  Yes.

3            LAW CLERK:  Two, David Ingles.

4            JUROR:  Yes.

5            LAW CLERK:  Three, Joseph Vinciguerra.

6            JUROR:  Yes.

7            LAW CLERK:  Four, Jeffrey Black.

8            JUROR:  Yes.

9            LAW CLERK:  Five, Tiffany Pollack.

10           JUROR:  Yes.

11           LAW CLERK:  Six, Margaret McEvily.

12           JUROR:  Yes.

13           LAW CLERK:  Seven, Jessica Valdez.

14           JUROR:  Yes.

15           LAW CLERK:  Eight, Jose Corneil.

16           JUROR:  Yes.

17           LAW CLERK:  Nine, Keith Wynne.

18           JUROR:  Yes.

19           LAW CLERK:  Ten, John Mell.

20           JUROR:  Yes.

21           LAW CLERK:  Eleven, Rachel Goldstein.

22           JUROR:  Yes.

23           LAW CLERK:  Twelve, Michelle Honor.

24           JUROR:  Yes.

25           THE COURT:  Members of the jury, you heard your

J7FTKID1

1    verdict as it now stands recorded.  The jury has been polled

2    and the verdict is unanimous.  The clerk will file and record

3    the verdict.

4              Do either counsel object to the discharging of the

5    jury in case number 18 CR 0872?

6              MS. TARLOW:  No, your Honor.

7              MR. MARGULIS-OHNUMA:  No, your Honor.

8              THE COURT:  Ladies and gentlemen of the jury, you have

9    completed your duty as jurors in this case.  Before I discharge

10   you, I have just a few brief comments to make.

11             You have just performed one of the most important

12   activities of being a United States citizen.  As you know, our

13   system of government is divided into three branches, the

14   executive, legislative and the judicial branches.  As a citizen

15   in most cases, your only participation in the executive branch

16   of government is when you cast your vote for President.  In the

17   legislative branch, you vote for your senators and members of

18   Congress who represent your interests.  But your participation

19   as jurors in the judicial branch goes to the very heart of

20   making our judicial system work and making it one of the most

21   successful and fair systems in the world.  So you could see the

22   importance of the task you just completed for all of us, the

23   Court, lawyers and the parties.  We thank you for having

24   performed your duty in an exemplary fashion.

25             The clerk will escort the jury from the jury box.

J7FTKID1

1   Please collect your belongings and return the copies of the

2   exhibits and the notebooks to the clerk.  You are excused.

3   However, I would like to speak to you just to thank you in

4   private in the jury room in a moment.  I would appreciate if

5   you just wait for a minute in the jury room.  Thank you again.

6            (Jury excused)

7            THE COURT:  If the parties would just wait a few

8   moments while I thank the jurors individually.  I will also ask

9   them whether they have any interest in talking to the parties.

10  Some do, some jurors do, and some don't.  And if they do, you

11  may or may not wish to chat with them briefly, and when I come

12  back, we'll also talk about scheduling a date for sentencing.

13           MS. TARLOW:  Thank you.

14           MR. MARGULIS-OHNUMA:  Thank you.

15           (Recess taken)

16           THE COURT:  The jurors indicated they would wish to

17  talk to counsel, if they wish to do so.

18           Let's look at the calendar for a date sometime 90 to

19  120 days out.

20           LAW CLERK:  Friday, November 1st, at 4:00 p.m.

21           MR. MARGULIS-OHNUMA:  That's fine for the defense,

22  your Honor.

23           MS. TARLOW:  Fine for the government.

24           THE COURT:  The Court will order production of the

25  presentencing memoranda.  So thank you again for having been

J7FTKID1

1    very cooperative and professional in your representation of

2    your respective clients which made it possible for the Court to

3    conclude the trial within the time frame that we had set out.

4    So thank you very much again.

5              MR. MARGULIS-OHNUMA:  Judge, may I make one

6    application, if I may?

7              THE COURT:  Yes.

8              MR. MARGULIS-OHNUMA:  I request an extension of the

9    time to file motions pursuant to Rule 29 and Rule 33.  I would

10   like to take 90 days.  I know that's a lot.  I have another

11   trial in the middle there in August.

12             THE COURT:  Rather than entertaining more motion

13   papers in this case, if you wish to make an oral application, I

14   will schedule a hearing and you make your presentation orally.

15   I don't think that any more extensive paperwork in terms of

16   formal motions is warranted.  If you wish, I can schedule a

17   hearing.

18             MR. MARGULIS-OHNUMA:  I think that makes sense, and

19   then we'll request to brief it if you need it after the

20   hearing.

21             To identify the motions would be about 30 days.

22             THE COURT:  Let's set a date for such a hearing.

23             LAW CLERK:  Friday, August 16, at 4:30.

24             MR. MARGULIS-OHNUMA:  Thank you.

25             MS. TARLOW:  That's fine for the government, your

J7FTKID1

1   Honor.

2              THE COURT:  Thank you very much.

3              MS. TARLOW:  Thank you, your Honor.

4              MR. MARGULIS-OHNUMA:  Thank you, Judge.

5              (Trial concluded)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25