```
J6DAAKIDC                    Conference
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          18 CR 872 (VM)

5   LLOYD KIDD,

6            Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        June 13, 2019
9                                       10:30 a.m.

10

11  Before:

12                  HON. VICTOR MARRERO,

13                                      District Judge

14                      APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    MOLLIE BRACEWELL
17  JACOB GUTWILLIG
    ELINOR TARLOW
18       Assistant United States Attorney

19  LAW OFFICE OF ZACHARY MARGULIS-OHNUMA
         Attorney for Defendant Kidd
20  ZACHARY MARGULIS-OHNUMA
    VICTORIA MEDLEY

21

22

23

24

25

J6DAAKIDC                    Conference

1          (Case called)

2          THE COURT:  Good morning.

3          This is a proceeding in the matter of United States

4     versus Kidd.  It is docket number 18 CR 0872.

5          Counsel, please enter your appearances.

6          MS. BRACEWELL:  Good morning, your Honor.

7          Molly Bracewell, joined by my colleagues, Eleanor

8     Tarlow and Jacob Gutwillig, for the government.

9          MR. MARGULIS-OHNUMA:  Zachary Margulis-Ohnuma, joined

10    by my associate Victoria Medley and our summer intern.  The

11    defendant, Lloyd Kidd, is seated between us.

12          Good morning, your Honor.

13          THE COURT:  I acknowledge the receipt of a letter

14    dated June 11, 2019, from the government stating the request

15    and schedule that the parties proposed for submission of

16    motions in limine and requests to charge and voir dire.  That

17    schedule is set forth in the June 11 letter.  The opening

18    motions are due on June 17, opposition by June 24 and reply in

19    by June 27 and the request to charge and voir dire by June 26.

20          Ms. Bracewell, does that schedule constitute the

21    government's understanding?

22          MS. BRACEWELL:  Yes, your Honor.

23          THE COURT:  All right.  Also, the defendant submitted

24    on June 7 a suppression motion regarding a superseding

25    indictment request to suppress certain records of a company

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J6DAAKIDC                    Conference

1    called Pengart Inc.

2         Ms. Bracewell, what is the government's contemplation

3    with regards to or response to that motion?

4         MS. BRACEWELL:  Your Honor, we would like the

5    opportunity to supplement our response just with a brief

6    opposition motion which we could do by I suppose Tuesday or

7    Wednesday of next week if that would be acceptable.

8         THE COURT:  All right.

9         MR. MARGULIS-OHNUMA:  Judge, if we could have 48 hours

10   to reply after that?

11        THE COURT:  All right.  So let's fix a firm date.  The

12   government's response by Wednesday of next week and the

13   defendant's reply by Friday.

14        MR. MARGULIS-OHNUMA:  Thank you.

15        THE COURT:  Now, there are some outstanding matters

16   that the parties have had submissions to the Court, in

17   particular, the motion of the defendant dated May 17 to

18   suppress certain evidence and statements and also to dismiss

19   the original statement for failure to set forth essential facts

20   constituting the offense.

21        The defendant's second motion asks for a bill of

22   particulars to specify certain facts constituting the offense.

23        Third, the suppression of the defendant's post-arrest

24   statements.

25        And next, the suppression of certain evidence seized

J6DAAKIDC                    Conference

1    from the defendant's apartment on the day of his arrest.  The

2    government contends that that evidence was in plain sight and

3    under the applicable exception should not be suppressed.

4         The defendant argues the fact that the evidence was

5    not in plain sight and therefore is not subject to the

6    exception.

7         The Court found that at least as to this one issue

8    there was a factual dispute that needed to be resolved at a

9    public hearing.

10        There's also a motion of the defendant to suppress the

11   evidence that was obtained pursuant to the March 7 warrant to

12   search certain electronic devices and also to suppress evidence

13   obtained from a December 4, 2018 warrant for location and

14   registered data number ending in 7216.

15        Let me just go through each of these motions and

16   indicate where the Court will come out and issue a formal

17   ruling with respect to the defendant's request or motion to

18   dismiss the original indictment.  The Court is not persuaded

19   that there is a warrant for that, granting that motion.

20        As the Court of Appeals have said, has explained

21   repeatedly, the dismissal of an indictment is an extraordinary

22   remedy.  Moreover, the Court of Appeals has repeatedly

23   explained also that under the indictment that I need to do

24   little more than track the language of the statute charged, the

25   time and place again in approximate terms of the alleged

J6DAAKIDC                    Conference

1    crimes.

2            Here, none of the details that the defendant seeks

3    would justify dismissal of the indictment.  It's an example

4    when it is referenced to on or about any indictment language in

5    violation occurring or certainty -- is also routinely upheld by

6    sentencing circuit is sufficient.

7            Next, the notes to the Federal Rules of Criminal

8    Procedure specifically permit the government to allege that

9    "the defendant committed the offense by one or more specified

10   means".  Similarly, a lack of any identity, age and information

11   of the alleged defendants do not support dismissal.  As the

12   Court of Appeal has stated in the Stringer decision the

13   identity of a victim is not required in the indictment unless

14   it is such importance that it must be spelled out in the

15   indictment.  In that case the identity of the victim was not

16   required in a case involving identity theft crimes.

17           However, Stringer also suggested that for -- of crimes

18   is of course an essential element question with the charge and

19   the defendant is of course is entitled on demand to its

20   disclosure to the bill of particulars or otherwise.

21           To that end, the Court is still considering whether it

22   is necessary to direct the government to issue a bill of

23   particulars here.  It is the Court's understanding that the

24   government provided some information in its discovery regarding

25   the ages of Victim One and Victim Two and some additional

1    details about someone with whom they allegedly met.

2            Now, with that degree of information and detail,

3    Mr. Margulis, what more does the defendant need in order to

4    present to have a adequate notice and be able to prep an

5    adequate defense.  Why is the material that the government has

6    presented not sufficient and why does it matter that the

7    government has not indicated the exact ages of each of the

8    victims but has indicated that the ages were around 14 or 16 or

9    under 14 or 16?  Why is that not sufficient?

10            MR. MARGULIS-OHNUMA:  First of all, I'm not aware that

11   the government has ever affirmatively told us the victims' ages

12   either as of the time of the alleged crimes or as of now, and

13   maybe they would could proffer right now.

14            THE COURT:  The government's submission in response to

15   your motion specifically indicated there are some motion of the

16   ages to the victims.

17            MR. MARGULIS-OHNUMA:  There's four counts now, two

18   minor victims where there is really an issue.  And I apologize

19   for missing that if I did.  I just don't recall them ever

20   telling us what the victims' ages were except that they were

21   minors.

22            THE COURT:  Ms. Bracewell.

23            MS. BRACEWELL:  Yes, your Honor.  We believe if it's

24   set forth in both our response to this motion and I would just

25   note that on page eight of our brief we identified that Victim

1    One was approximately 14 years old and Victim Six was

2    approximately 16 years old.  There's some confusion our warrant

3    application and our indictment diverge in numbering because we

4    have only charged specific victims.  But so it's clear from the

5    indictment, the victim identified as Victim One was 16 years

6    old at the time that she was trafficked by this defendant and

7    in Count Two the Victim Two was approximately 14 years old at

8    the time that she was trafficked by the defendant.

9            MR. MARGULIS-OHNUMA:  What I need to know, your Honor,

10   is whether I can rely on that or whether I find out later, oh,

11   sorry.  We mixed up the victim numbering again.  Because we've

12   been told many, many numbers with many, many victims.  They

13   were asking us to arrive at bail minutes that the magistrate

14   judge found from internally contradictory.

15           So I'm requesting a bill of particulars, a simple

16   letter Victim One was "X" and Victim Two was "Y".  I am

17   entitled to that because I'm playing whack a ball and trying to

18   prove things about timing that are changing and influx.  So I

19   would just ask the government if we are in agreement that I

20   need that and surely I do, that the government be directed to

21   put that in a very simple bill of particulars so that we can

22   rely on it, it becomes part of the indictment and I know what

23   I'm defending at trial.

24           THE COURT:  Mr. Margulis, the government has both in

25   writing and in the response to your motion here on the record

J6DAAKIDC                    Conference

1    with the reporter taking it down on the transcript indicating

2    what the ages of the victims were.  What more do you need and

3    is that not enough at this point putting form over substance?

4              MR. MARGULIS-OHNUMA:  It's not.  A bill of particulars

5    is an ancient vehicle to constrain the indictment so that we

6    assure that the indictment protects against double jeopardy and

7    adequately informs us.  It has a talismanic power that changing

8    representations that start at a bail hearing and go in motion

9    papers that are unclear sworn, at least electronically signed,

10   don't have.  So I'm asking for a bill of particulars so at

11   least as to the ages of the victims at the time.  I don't see

12   the prejudice to the government in simply asserting in a bill

13   of particulars that this was their ages.  Then I know we're

14   talking about the same victims.  It serves a very useful

15   purpose.  In this case where the government has made multiple

16   conflicting representations I think it's warranted.

17             THE COURT:  Ms. Bracewell.

18             MS. BRACEWELL:  I think these aren't conflicting

19   representations.  There are more victims that we're aware of

20   and have used in referenced in warrant applications that were

21   charged in the indictment.  So I think where we're trying to be

22   very clear with the respect to the two victims what we've set

23   forth in the our motion papers is correct.  These are

24   approximate dates.  They're based on witness testimony,

25   testimony that would be further coming to light during the

J6DAAKIDC                    Conference

 1  trial.  So we just simply don't think it's necessary in this

 2  case.

 3          We're happy to discuss providing redacted birth

 4  certificates, if there's questions about the voracity of the

 5  victims, representations about their ages, we have no problem

 6  other than protecting the anonymity of the witnesses but we're

 7  happy to discuss with defense counsel redacted forms of

 8  identification documents so they can assure themselves that

 9  they are aware of the identity of the victim but it's not

10  necessary to be contained in any bill of particulars.

11          MR. MARGULIS-OHNUMA:  Your Honor, if there are birth

12  certificates and documentary information of the ages that the

13  government plans to offer to the jury at trial, those should

14  have been handed over months and months ago.  I can't believe

15  that there birth certificates available that wouldn't have been

16  handed over.  We need to defend this case and investigate.  The

17  government repeatedly said they were aware of their discovery

18  obligations.  How do they plan to offer a birth certificate at

19  trial and not have shown it to me two and a half weeks before

20  trial?

21          MS. BRACEWELL:  We have not obtained them but we will

22  obtain them.  We will happily make steps to obtain them.  But

23  we are also prepared and will obtain birth certificates through

24  our subpoena power in anticipation of trial.  It's not

25  something that we have in our possession that we haven't

J6DAAKIDC                    Conference

1     produced but it's something that we can obtain.

2              THE COURT:  Ms. Bracewell, I've made reference to form

3     over substance before as to Mr. Margulis.  Let me flip the coin

4     around.  What is wrong with the government submitting a letter

5     to the Court in response to this request and in response to the

6     discussion with having today confirm that the ages of two minor

7     victims are approximately 14 and approximately 16.

8              MS. BRACEWELL:  I think the opposition is that it's

9     simply not necessary as it is required for a bill of

10    particulars.

11             THE COURT:  I'm not talking about whether there's a

12    bill of particulars or not, just a confirmation that those are

13    the ages of the victims that Mr. Margulis is going to be

14    defending concerning the charges against the defendant.

15             MS. BRACEWELL:  I mean, we have and are happy to make

16    confirmations in writing in terms of formalizing it in a bill

17    of particulars.  We think it's not necessary or required.  But

18    we have already formalized in our motion response responses the

19    actual ages of the victims against whom the defendant is

20    charged with trafficking.  So it's not reluctance.  To be

21    specific, we're happy to provide the approximate ages have both

22    here on the record today and in our motion papers.

23             THE COURT:  So in that case there is no reason why you

24    cannot repeat yourself and confirm that that is the

25    government's response to the defendant's request.  Whether you

J6DAAKIDC                      Conference

1    call it a bill of particulars or not doesn't matter.  The

2    important thing is what are those ages?  And government has

3    already stated what they are.  Mr. Margulis is asking for maybe

4    belt and suspenders or lace around the package.

5            MR. MARGULIS-OHNUMA:  Judge, may I read into the

6    record that what Ms. Bracewell is referring to as the

7    government stating what the age is?  What they said was, the

8    government further identified during bail arguments held in

9    this matter that Victim One was approximately 14-years-old and

10   that Victim Six was approximately 16-years-old at the time that

11   they were trafficked by the defendant.

12           So what they're saying is a said it at the bail

13   hearing.  And at the bail hearing -- and I have the minutes in

14   front of me -- but they contradicted themselves several times.

15   There was a rush.  People were confused about which victims

16   were which.  They alleged there were four minor victims and

17   it's not enough to say we said it at the bail hearing.  They

18   wasn't don't want to pin themselves down to particular victims.

19   They could swap out victims on me between today and trial.

20   There is nothing to pin them down.  That's why this case calls

21   out for a bill of particulars.

22           I would submit that a letter whether it says at the

23   top, Dear Judge Marrero or whether it says bill of particulars,

24   so they can't change their mind later and says, no, she was 15

25   or 16 or 17.

J6DAAKIDC                    Conference

1          THE COURT:  Mr. Margulis, I think we're now belaboring

2     the point and beating a dead horse.  I think we are clear.  The

3     answer you're question about what is to pin them down is very

4     simple.  This Court pins them down.  If they bring in a victim

5     at the trial who says he or she is 30-years-old, that is not

6     approximately 14.

7          The statute says "minor" and that's a legal term.  And

8     if the government says approximately 14 and approximately 16

9     that's a minor.  All right?

10          So again, Ms. Bracewell, if you would just address a

11     letter to the Court indicating in accordance with this hearing

12     that the government confirms the ages of the victims, what they

13     are and what you have represented on the record and that should

14     suffice.

15          MS. BRACEWELL:  We will do that today.  Thank you.

16          MR. MARGULIS-OHNUMA:  May I be heard on the other

17     elements?

18          THE COURT:  Yes.

19          MR. MARGULIS-OHNUMA:  The government has turned over

20     in discovery to us four thousand photographs of women that it

21     alleges were posted on Backpage and by the defendant.  I think

22     there is some overlap.  So it's saying that since 2012 sometime

23     after 2012 to present there were approximately four thousand or

24     something, maybe a few less than four thousand woman that he

25     was involved in advertising their sexual, commercial sexual

J6DAAKIDC                    Conference

1   services on Backpage.

2           They're saying of those, four have come forward and

3   are in the indictment as victims.  It's impossible for me to

4   prepare for trial and provide an adequate defense for Mr. Kidd

5   without knowing who those people are.  We have some guesses.

6   There's 19 defendants in this case and related cases and

7   there's some overlap and we are doing some dividing.  We have a

8   private investigator to try to figure it out but we just

9   guessing.  We're happy to protect the anonymity.  But we're

10  less than four weeks before trial.  The witnesses are going to,

11  I assume that the witnesses are going to testify at trial and

12  become known.  It's time for them to identify these witnesses

13  so that we can adequately investigate and answer these charges.

14          The defenses are going to be as to the adult victims

15  that no force or coercion was used.  And as to the alleged

16  minors victims, that they weren't minors at the time that they

17  came into contact with Mr. Kidd.  We are going to have to have

18  to find documentary evidence which we're working up to prove

19  that, which we'll provide to the government once we are clear

20  as to what they're alleging to prove that.  But it's now three

21  and a half weeks before trial.  We nee the government to come

22  up and tell us the names, the dates of birth, the names of the

23  lawyers of the victims.

24          And so that's as to point one and two of the bill of

25  particulars.

1    The other points are a little bit about when they came

2    into contact with Mr. Kidd and when they stopped being in

3    contact with Mr. Kidd.  They're implied broadly in the

4    indictment but the indictment covers a period from 2012 to the

5    present.

6    So, is that right Ms. Bracewell?  The indictment

7    covers a broad time period.

8    So if what they're really saying is they met in

9    February, then just tell us so I don't have to for worry about

10   accounting for his movements from years earlier which is what's

11   implied by the government current stance.  So that's why we

12   want to know when they met.

13   Same argument with when they were last in contact.

14   Obviously, with the two added victims that were added on the

15   superseder that was at the time of arrest.  But for the other

16   two victims if they were not in contact with him after spring

17   of 2017 I don't want to spend resources investigating what was

18   going on in 2018.  There is no prejudice to them from simply

19   telling us that.

20   Finally, they're alleging that there were commercial

21   sex acts.  They're going to prove up specific commercial sex

22   acts.  Don't they have to tell us when and where those acts

23   took place and what the nature of them was so I can disprove

24   them?

25   Same with the force threats and forced fraud and

J6DAAKIDC                    Conference

1   coercion, and then can I start defending the case.  But as it

2   is now they haven't told me anything about the case.  We're

3   three weeks before trial.  This is information, basic

4   information that's needed to make sure that the trial proceeds

5   in an orderly fashion.

6            THE COURT:  Thank you.

7            Ms. Bracewell.

8            MS. BRACEWELL:  On the Backpage advertising being

9   referenced here, we received them and produced them at the end

10   of May as quickly as we received them from the FBI.  There are

11   we believe four thousand images.  Those are associated with a

12   lesser number of advertisements.  Any particular advertisement

13   could have between one and ten images.  We produced that

14   universe of data because those were advertisements that we

15   believe belonged to the defendant.

16            So we provided all of that information because we

17   believe it's relevant.  But candidly, we have not identified

18   all of the victims who are depicted in the images.  We're

19   reviewing them.  We're conferring with our victims and the

20   other witnesses we expect to call to see if they identify

21   themselves.  Many of the images consistent with what we

22   understand to be sort of typical practice on this site blur out

23   of faces or they show body parts rather than full images.  And

24   so we've attempted to explain to the defense counsel we're not

25   trying to hide the ball and we expect to make evidence

1    available and our exhibit list available when have it but we're

2    process reviewing and grappling with that information

3    ourselves.

4            So you know I would like to be helpful but we believe

5    the defendant is entitled to that full universe of data, but we

6    can't go through the four thousand images and say who's who or

7    who's not because we simply at this point are still evaluating

8    it ourselves.  And we certainly don't think it sort of falls

9    within the realm of a bill of particulars to have the discovery

10   annotated or explicated in the way that this defendant seems to

11   be asking.

12           Then with respect to the types of force, the

13   particular commercial sex acts, we think that veers towards the

14   manner in which we intend to the prove the crime at trial.

15   This is the substance of the witness testimony that we plan to

16   draw out.  So again, it just goes beyond what's required in a

17   bill of particulars.  So we just we simply can't sort of spell

18   it out with next date and wrapped with bow because it's really

19   not the nature of the allegations or the manner in which the

20   testimony will come out.  It'll be over a period of time the

21   particular victims were residing with the defendant in a

22   residence that he controlled.  Clients came to meet them at

23   that residence.  There was a variety of sort of coercive

24   methods employed, a variety of force and types of threats of

25   force.  So all of that we expect to come out in the 3500

J6DAAKIDC                    Conference

1    material when that's eventually produced but we just don't

2    think it's an appropriate sort of set of data that would be

3    addressed in the bill of particulars.

4              THE COURT:  Ms. Bracewell, Mr. Margulis has made

5    reference to types of information that he claims he needs.  You

6    indicate some, if I'm reading you correctly, you are not

7    disputing that some of that information is essential for

8    preparation of the defense but the question seems to be one of

9    timing.  The government no less and the defense should be in a

10   position to have this kind of fluid evidentiary record.  At

11   some point you need to be prepared for trial or not be

12   prepared.

13             So the question to me is at what point can you

14   reasonably say --

15             MS. BRACEWELL:  To be very clear, we are abiding by

16   our discovery obligations.  The defense requested a very quick

17   trial date which we were happy to accommodate but made very

18   clear at the time that we were still waiting on the 23

19   electronic devices and the Backpage returns.  So we certainly

20   don't think it's appropriate to sort of cabin our proof because

21   a very rapid trial date was set.  We're providing the

22   information as quickly as possible.  The Backpage ad, they've

23   now had for several weeks.  They're certainly able to review

24   them with the defendant and make probably more out of it than

25   we can but all of that is evidence of the defendant's

J6DAAKIDC                    Conference

1    involvement in sex trafficking.  So we think that that has been

2    provided with more than enough time for them to make use of it

3    in preparing a defense.

4              And with respect to the electronic devices, we

5    continuing to access them and we're turning them over as

6    quickly as we receive them.  But I think the answer to that is

7    if the defendant needs more time to evaluate and assess the

8    information on that, the appropriate mechanism is an

9    adjournment rear rather than to curtail the government's proof.

10   This is a vast amount of data and we're doing our best to turn

11   it over immediately.  But I don't think a sort of race to the

12   trial, it results in a windfall for the defendant in terms of

13   the proof that the government is able to offer.

14             THE COURT:  Thank you.

15             Mr. Margulis.

16             MR. MARGULIS-OHNUMA:  I am not complaining that we

17   haven't gotten -- the government's still investigating.  They

18   haven't found anything.  I'm not complaining that we haven't

19   gotten anything.  I am complaining I don't know what the

20   charges are.  I don't know what the allegations are.  And I

21   think if I read what you were saying correctly, if the

22   suggestion is early disclosure of the 3500 to cure the bill of

23   particulars problem, I think that's exactly right.  I think if

24   we had witness statements that identified what was going on

25   here we'd be able to defend against it.  That might be an

1     appropriate remedy.  The electronic devices, if they find

2     something incriminating I'm sure they'll turn it over.  The

3     issue is what are the allegations that he is supposed to have

4     done that they had probable cause for when they indicted him?

5          THE COURT:  Ms. Bracewell, what is the earliest that

6     the government might be prepared to turnover the 3500 material?

7          MS. BRACEWELL:  Your Honor, we had suggested and I

8     believe that what we would propose at this time is July 1, one

9     week before trial, that's more than we typically provide.  This

10    is not an extensive list of witnesses that we expect to have

11    testify.  And the accounts already been set forth in warrant

12    applications.  Much of the detail that the defendant says he

13    needs is already available in the warrant applications.

14          So I think that one week more than allows for the

15    preparation of the defense and it accounts for the victims'

16    sensitivities here.  We're talking about trafficking victims,

17    some of whom are still minors.  There is the allegation that

18    there was forced, threats of force, coercive methods employed.

19          It's simply necessary in this case to protect the

20    victim's anonymity as long as possible and to make sure that

21    the defense has time but that that's accounting for particular

22    sensitivities here.

23          THE COURT:  All right.  Thank you.

24          MR. MARGULIS-OHNUMA:  Sorry, judge.  So we just

25    changed the victim age again.  Some of them are still minors.

1    I thought the one that was 2014 was 14 in 2015 and one was 16

2    in 2017 is also now 19.  So there is no issue of them now being

3    minor.  Maybe we could just clarify that again.

4              MS. BRACEWELL:  I just want to interject because if

5    the defense counsel would just take a look at the indictment.

6    As we said, Victim One who is in Count One which we're talking

7    about the spring of 2015 was approximately 16 years old.

8    Victim Two we're talking about the summer of 2017, was

9    approximately 14 years old.  Victim Two is still a minor.  She

10    was accompanied by three minors when she went to the

11    defendant's residence in Brooklyn.  And so those individuals,

12    some of whom accompanied her and were present for the conduct

13    that we've charged are still minors.

14              So I just want to be very clear on the record as we've

15    made representations today about the identities of Victim One

16    and Two.  I think the confusion is Victim One was in 2015

17    approximately 16.  Victim Two in 2017 was approximately 14 so

18    that's very clear.

19              THE COURT:  All right.  Thank you.

20              Two observations.  One is I am not persuaded that any

21    further details are needed by way of a bill of particulars in

22    this case assuming the government produces the 3500 material

23    one week before the trial which is earlier than the government

24    typically produces the 3500 material would be sufficient.

25              MR. MARGULIS-OHNUMA:  Judge, may I interject?  I'm

J6DAAKIDC                        Conference

1    sorry to interrupt.

2            THE COURT:  Let me finish.

3            MR. MARGULIS-OHNUMA:  Sorry.

4            THE COURT:  The applicable case law does not require

5    the indictment to provide the level, of as the government has

6    indicated, annotated details the defense finances is

7    requesting.  Defense says that it does not know what it is

8    defending.  I think it's absolutely disingenuous to say that at

9    this point.  The indictment is charging sex trafficking of

10   minors and I don't see that that is unclear and does not give

11   sufficient notice of what the defendant's being charged with.

12           Mr. Margulis.

13           MR. MARGULIS-OHNUMA:  In terms of the 3500, so turning

14   it over July 1 in my view is you unacceptably late and won't

15   allow us to investigate.  July 4 is a holiday.  It's a very

16   slow week in general.  I have family commitments on the evening

17   of July 3 and the morning of July 4.  I would suggest that

18   turning it over at the time the motions in limine are due might

19   not be a problem but July 1st is just too late.  We are not

20   going to be able to get investigators out and contact the

21   alleged victims' lawyers and things like that during the July

22   4th week in a way that ensures an orderly trial and I'm not

23   screaming and yelling at that point about Brady and other

24   issues once we see that material.

25           THE COURT:  To some extent, Mr. Margulis, the

1    difficulty here comes back to your request that this matter be

2    tried earlier and your entitled under the law to a speedy

3    trial.  But bear in mind that sometimes when you rush to have a

4    trial as speedily as the defense may wish risk, you run into

5    exactly the difficulties that both parties are encountering

6    here which is the some time is required when the evidence is no

7    voluminous for one second to review.  So the Court granted your

8    request for an early trial and now you are seeing what some of

9    limitations of that request may be.

10           MR. MARGULIS-OHNUMA:  Judge, having a later trial

11   would just kick the can down the road.  It's July 4th week but

12   other than that if we had a September trial they still wouldn't

13   tell us what he did until a week before the trial and they'd

14   have more time to try to prove it up with their 22 devices that

15   they seem to have found.  I'm not asking for a later trial date

16   I'm asking for a fair innocence of charges against him

17   sufficiently in advance of trial to meet the charges and

18   investigate them.  They have a Brady and a Giglio obligation to

19   do that which I think they're struggling with.  I think the

20   wiser course for everybody involved would be not to turnover

21   the 3500 the Monday of July 4th week when we have the trial

22   starting the Monday before.  I won't belabor it more.

23           THE COURT:  OK.  Thank you.

24           Ms. Bracewell, to the extent there may be witnesses in

25   the 3500 material who do not pose the kinds of difficulties as

1   the government understandably is concerned about the identity,

2   possible to be threats, if there are such witnesses whose

3   testimony could be made available sooner than the timeframe the

4   government now indicates, I think it may be in the interests of

5   good faith and comity for the government to break those out and

6   rule the concerns that Mr. Margulis suggested here to some

7   extent.

8            MS. BRACEWELL:  Just to put on the record, we've

9   believe we've complied with our Brady obligations.  We've

10  turned over all the evidence.  They're not aware of any Brady

11  materials but if we encounter any at any point we'll make

12  immediate disclosures.

13           THE COURT:  All right.  Thank you.

14           Next, the defendant challenged or requested the

15  suppression of the defendant's post-arrest statements.  The

16  government has indicated that it does not intend to raise those

17  statements.

18           Ms. Bracewell, is that correct?

19           MS. BRACEWELL:  That's correct.

20           THE COURT:  So that makes that motion moot.

21           Next is the question of the evidence seized from the

22  apartment which the government says is in plain view and the

23  defense challenges that as a factual matter.  So that raises a

24  question of when to schedule the evidentiary hearing in order

25  to address that issue.  The Court had previously indicated that

1    the hearing might be, could be today but it's not feasible at

2    this point.  So we propose July 1st or 2nd.

3              Ms. Bracewell, what is the government's preference?

4              MS. BRACEWELL:  We would be avail on either of those

5    days and the agents are available to testify on both of those

6    days as well.

7              MR. MARGULIS-OHNUMA:  Judge, in light of the

8    government's giving us the 3500 on those days, I really would

9    like to have a hearing before that.  I would request either

10   next week or the week after if the Court is available for the

11   hearing.

12             THE COURT:  Ms. Bracewell, what's the government's

13   view of an earlier date?

14             MS. BRACEWELL:  We'd be happy to make the witnesses

15   available.  One of the witnesses is not available the 27th or

16   28th.  But within the next two weeks, they're otherwise largely

17   available.

18             THE COURT:  How long do you think the presentation

19   would require?

20             MS. BRACEWELL:  We believe we could, it would take a

21   morning, perhaps, a couple hours of testimony.  We intend to

22   call three witnesses neither of whom we expect to go very long,

23   maybe each half an hour and then depending on the length of the

24   cross --

25             MR. MARGULIS-OHNUMA:  Can I raise something?

J6DAAKIDC                    Conference

1       THE COURT:  Yes.

2       MR. MARGULIS-OHNUMA:  I think we would be seeking to

3   compel testimony by the two victim witnesses in the new

4   indictment.  So those were the individuals that were present in

5   the apartment at the time that Mr. Kidd was arrested.  So we

6   would request either the government to accept subpoenas or

7   identify their attorneys.  I think we'll take our chances as

8   far as scheduling goes.  I just wanted to add that.  So that

9   would take probably another hour to the hearing.

10       MS. BRACEWELL:  I think in response we would just like

11  to clarify the scope.  Those victims were not involved in the

12  seizure of the devices.  That was law enforcement activity.

13  And our understanding of what the Court intends to hear

14  evidence regarding is the location of the devices at the time

15  that the law enforcement witnesses seized it.

16       So I just would seek clarification on the scope

17  because I think making the victims testify as to law

18  enforcement seizure would be wholly outside the scope of

19  hearing as we understand it.

20       MR. MARGULIS-OHNUMA:  Sure.  So the victims were, this

21  was six in the morning.  The two other people were there with

22  Mr. Kidd in the apartment when he was woken up and taken out by

23  law enforcement.  So they were present and had an opportunity

24  as eyewitnesses to see where these devices were at the time

25  that they were seized.  Law enforcement claims they were just

1    lying out in the open and took pictures showing that.  But we

2    don't know if they moved things around or not.  Those witnesses

3    were present so they would know.  And I suspect some of these

4    were, 23 phones taken and three people living there.  I suspect

5    some of those devices may have actually belonged to those

6    witnesses and they may be able to say, sure, you know I had it

7    on my bedside.  It was here.  It was there.  And that's the

8    state of play when law enforcement goes in and claims that

9    things were in plain view.  So they have material testimony.

10   I'm not going to go beyond that.  I am going to ask what did

11   you see about where these devices were?

12              THE COURT:  All right.

13              MS. BRACEWELL:  My understanding is that the defendant

14   challenged five devices as having not been in plain view.  Four

15   of them he alleged were not found in the apartment but were

16   instead found in the safes.  One device was found in a closet

17   and the allegation was that that particular computer in the

18   closet could not have been in plain view.  Understanding that

19   they may have been witnesses to the arrest, that they might

20   have been witnesses to the protective sweep, I simply don't

21   understand that any of particular devices that are challenged

22   are at all susceptible to these particular witnesses

23   testifying.  And they don't, we also just would like to note

24   the extreme sensitivity of calling victims to give testimony in

25   front of the defendant mere weeks before trial, I think that

1     the defendant's request seems to us to be extremely concerning.

2              THE COURT:  Is there any dispute as to where that safe

3     was located?

4              MS. BRACEWELL:  So we expect the witness testimony

5     from the agents to establish that the two safes were found in

6     the defendant's bedroom and closet in the particular location.

7     We also expect that the agents will testify that the manner in

8     which they conducted a protective sweep, that is they entered,

9     dispersed and went through the various rooms individually.  The

10    victims were not in the defendant's bedroom.  They weren't in

11    the defendant's bedroom when they entered the residence, nor

12    did they subsequently enter into the defendant's bedroom.  So

13    the two safes were in the defendant's bedroom seen during the

14    protective sweep and the computer, the fifth and final

15    challenged device was also in the closet in the defendant's

16    bedroom.

17             THE COURT:  Well, Ms. Bracewell raises an interesting

18    set of questions.  At this point we don't know who those

19    individuals were.  All that we know from what you are saying is

20    that they happened to have been in the apartment at the time of

21    arrest.  And we don't know what relationship they may have had

22    with the defendant, whether they resided in that apartment,

23    whether they regularly were there in the apartment and

24    conceivably may have some knowledge of the defendant's keeping

25    a safe or safes in the apartment.  If it's someone who

J6DAAKIDC                    Conference

1    regularly dealt with the defendant, not inconceivable that that

2    person may have some awareness of where the defendant kept the

3    safe.  Those are all possibilities that would be very relevant

4    to an issue that's before the Court.

5          MS. BRACEWELL:  So understanding that they might have

6    testimony about the location of the safes I think what's

7    relevant to the law enforcement seizure is where the officers

8    observed them to be and their evaluation at that time of

9    whether they were immediately incriminating for purposes of

10   seizure.

11         So I'd also like to note one more specific fact which

12   is the four devices that the defendant challenges is having

13   been in the safes rather than in plain view.  We expect that

14   the agent testimony will establish that the seizing officer who

15   created an evidence log in the morning when she left the

16   defendant's premises included the four devices prior to the

17   safes even being opened.

18         So the protective sweep was conducted by a number of

19   law enforcement agents.  They gathered what devices were

20   available to them and then they sought a warrant for the safes

21   that were in plain view.  Those safes, the warrant wasn't

22   obtained and the safes weren't opened until the afternoon.  But

23   the individual in the morning who created the evidence log that

24   includes four of the seized devices was no longer present or

25   gathering evidence.  So we expect her testimony alone will

1    overwhelming establish that those four devices could not have

2    been the safes as the defendant alleges.

3          So with respect to the specific facts presented by

4    this case, I think the victim testimony is simply not necessary

5    because of the particular fact pattern that the defendant

6    alleges and the particular facts that he is challenging.

7          THE COURT:  Let's continue with the hypothetical that

8    I indicated earlier.  Let's suppose that one of the victims

9    says that he or she resided in that apartment on a regular

10   basis for the past year and she or he or she had seen the

11   defendant place stuff in a safe that is located in the living

12   room would there not be questions of at the very minimum

13   credibility if the agent says that he or she saw the safe in

14   the bedroom?

15         MS. BRACEWELL:  So understanding that hypothetical,

16   true, yes, there might be if there was a dispute as to where

17   the safes were located, the way that the defendant's affidavit

18   reads is that he doesn't dispute that the safes were located

19   one in the bedroom and one in his closet.  He instead disputed

20   that they were in plain view.  He alleges with respect to the

21   safe in the closet that it was obscured by a box of baby wipes

22   and he alleges that the safe in the corner was sort of situated

23   between the dresser and radiator such that it could not have

24   been observed by the law enforcement officer.

25         So in this instance the factual question is not where

J6DAAKIDC                         Conference

1    the safes were when the officers entered the apartment.  It's

2    instead, whether these particular officers in fact observed the

3    safes in the locations that they were.  And I think as the

4    officers will explain in testifying, their practice in

5    conducting a protective sweep is to assess and evaluate the

6    four corners of a room to assure themselves that they've

7    removed any threats.  And in so doing they identify both of

8    these particular safes.  They photographed them in the

9    locations that they were found before obtaining the search

10   warrant that led to their subsequent search.  So I think

11   accepting your Honor's hypothetical that that might necessitate

12   witness testimony, I think this situation simply doesn't.

13          THE COURT:  Well, if you have individuals in the

14   apartment at the time that the arrest took place and at the

15   time that the officer went into the bedroom and found by their

16   testimony the safes in the bedroom, I think it is not

17   irrelevant to have another individual or individuals who also

18   were in the apartment at the time that the officers came in to

19   indicate what they saw or didn't see as to the location of

20   these safes.

21          If it turns out that these individuals were to testify

22   that they had regular contact with the defendant in that

23   apartment and had reason to know whether or not there were

24   safes in that bedroom which you would want to know how

25   frequently they were in that room to be able to verify whether

1    or not they had reason to have knowledge of the location of

2    safes, in this case that testimony could go not only to

3    establishing the location of the safes but also potentially,

4    the matters of credibility of the agents.

5         MS. BRACEWELL:  I think we would note that the

6    application for the search warrant for the safes indeed, cites

7    to the victims' knowledge and they knew that the defendant kept

8    money in the safe and so they were aware of the fact of the

9    safes.  But again, I would just focus on the actual disputed

10   facts in this hearing.  While they might have relevant

11   testimony about the safes at large, I don't see that their

12   testimony would be relevant to the particular facts in dispute

13   here.

14        THE COURT:  The dispute here is whether or not the

15   safes were in plain view.  And if these individuals say that

16   the safes were in the closet it, in fact, would support the

17   government's theory.

18        MS. BRACEWELL:  So again, I might just not be tracking

19   correctly but I don't think that the fact that one safe was in

20   the closet and one safe was in the bedroom is in dispute.  I

21   think the location of the safes is undisputed between law

22   enforcement and the defense.  So I think the only question is

23   sort of visibility to law enforcement in conducting the

24   protective sweep at the time of the morning of the arrest.  So

25   again, were there a dispute about the location that that's

J6DAAKIDC                    Conference

1    simply not present here.  Where they were found is documented

2    in photographs taken that morning.  Those, we don't understand

3    to be disputed.  There's no allegation that they, the safes

4    were moved but instead, objects around them might have been

5    moved by the officers or something to that effect.

6              MR. MARGULIS-OHNUMA:  There is an allegation the safes

7    were moved and the witnesses that I'm proposing would know

8    where they were before the searches.  So that's part of proving

9    that up.

10             THE COURT:  I think there is sufficient uncertainty on

11   this issue that would support a determination that these

12   witnesses should be allowed to testify and to indicate what

13   their understanding was of the location of these safes so as to

14   establish whether or not the safes were in fact where the

15   officers said they were or potentially whether they were moved.

16   If these witnesses were in the room at the time or had

17   knowledge of the room over the course of time, they could

18   testify that the safes were not where the photographs indicate

19   but potentially somewhere else.

20             So I think that for the purposes of trying to get

21   clarification and approximate what is the truth here the

22   testimony of those witnesses may be important.  All right?

23             MR. MARGULIS-OHNUMA:  Thank you, judge.  I appreciate

24   the ruling I guess mechanically, I guess we'll work out

25   compelling their presence at the hearing.  I guess we're up to

1    three or four hours at the hearing.

2          THE COURT:  All right.  Now, let me turn to the other

3    two matters that I made reference to before, which is the

4    evidence obtained pursuant to the warrants of March 7 to search

5    the electronic devices that were seized and the suppression of

6    evidence obtained from the warrant of December 4 and the pen

7    registered data number ending in 7216.

8          I'm not persuaded that the defendant has made a

9    sufficient case as to those matters to support a determination

10   that the warrants were not properly issued and that the

11   evidence should be suppressed.  Again, I will issue a more

12   detailed ruling on those questions.

13         Anything else from the government?

14         MS. BRACEWELL:  Yes, your Honor.  The S1 indictment

15   was returned I believe on June 5 and the defendant has not yet

16   been arraigned on the S1 indictment.  If we could do so?

17         THE COURT:  All right.  Thank you.

18         Mr. Margulis, anything else on your end?

19         MR. MARGULIS-OHNUMA:  We do need to set a final date

20   for the hearing.

21         THE COURT:  Yes.  We're looking at the calendar for an

22   early date on July 1.  June 21, Friday, between noon and four

23   p.m. we have a window.

24         Ms. Bracewell, would that be suitable for the

25   government?

J6DAAKIDC                    Conference

1          MS. BRACEWELL:  That's fine for the government.

2          MR. MARGULIS-OHNUMA:  Perfect, your Honor.

3     Thank you.

4          THE COURT:  Let's proceed with an arraignment of the

5     defendant on the superseding indictment.

6          Mr. Kidd, please rise.

7          Let me remind you of certain rights that you have with

8     regard to this superseding indictment.  You have the right to

9     remain silent.  You need not make any statement.  If you have

10    already made statements to the authorities you need not make

11    any additional statements.  Any statements that you do make may

12    be used against you.  You are represented here by counsel today

13    and you have the light to be represented by an attorney at all

14    future proceedings in this matter.

15         Mr. Margulis, have you seen a copy of the superseding

16    indictment?

17         MR. MARGULIS-OHNUMA:  I have, your Honor.  I've

18    reviewed it with my client and he waives its public leading.

19         THE COURT:  How does the defendant plead on the

20    superseding indictment?

21         MR. MARGULIS-OHNUMA:  Not guilty.

22         THE COURT:  All right.  Thank you.

23         Is there anything else from the government now?

24         MS. BRACEWELL:  Nothing further from the government.

25         THE COURT:  Anything else from the defendant,

J6DAAKIDC                     Conference

1      Mr. Margulis?

2             MR. MARGULIS-OHNUMA:  No.  Thank you very much, you

3      were.

4             MS. BRACEWELL:  Your Honor, since we have a

5      superseding indictment, I would move to exclude time on the

6      superseding indictment until July 8, the date of trial, just so

7      that the defense can continue to prepare for trial, we can

8      continue with the briefing of the motions underway and for all

9      the remaining trial preparation.

10            MR. MARGULIS-OHNUMA:  We object to any exclusion of

11     time, your Honor.

12            THE COURT:  The government has moved to exclude or

13     adjourn time from speedy trial calculations.  The defendant's

14     objected.  I am granting the government's motion.  I find the

15     reasons conveyed to the Court warrant an exclusion of time as

16     it is intended to ensure the effectiveness of counsel and to

17     prevent any miscarriage of justice.  The Court is satisfied

18     that the ends of justice served by the granting of this

19     continuance are in the best interests of the public and the

20     defendant in a speedy trial.  This order of exclusion of time

21     is pursuant to the provisions of the Speedy Trial Act, Title 18

22     U.S.C. Section 3161(h)(7)(b)(2) and (4).

23            Thank you.  Have a good day and a good week.

24            (Adjourned)

25