USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/13/2021

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------X
UNITED STATES OF AMERICA,          :
                                   :
                                   :       18 CR 872(VM)
          -against-                :     DECISION AND ORDER
                                   :
LLOYD KIDD,                        :
                                   :
                 Defendant.        :
----------------------------------X
```

**VICTOR MARRERO, U.S.D.J.:**

On July 15, 2019, defendant Lloyd Kidd ("Kidd") was convicted following a trial of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(b)(2) and 2 ("Count One"), and inducement of a minor to engage in sexually explicit conduct, in violation of 18 U.S.C. §§ 2251(a), (e), and 2 ("Count Five"). (See Minute Entry dated July 15, 2019.) Kidd is currently awaiting sentence. (See Dkt. No. 109.)

Now pending before the Court is Kidd's motion for a new trial under Federal Rule of Criminal Procedure ("Rule") 33. (See "Motion," Dkt. No. 110.) The Court received the Government's opposition (see "Opposition," Dkt. No. 114) and Kidd's reply (see "Reply," Dkt. No. 115). For the reasons set forth below, the Motion is DENIED.

## I. BACKGROUND

Count One and Count Five both stemmed from conduct involving Victim-1. In particular, Count One charged Kidd with sex trafficking Victim-1, and Count Five charged Kidd

1

with taking lewd photos of Victim-1 before she turned eighteen years old. These photos, marked Exhibits 1204-1207[1], were entered into evidence at trial. Kidd's Motion is based on an alleged discrepancy between these photos and another set of photos that were also entered into evidence, marked Exhibits 1213 and 1217.

Exhibits 1213 and 1217 depict a topless girl with a tattoo on her right thigh facing the camera. Victim-1 identified herself as the girl in these photos in her sworn trial testimony. (Trial Tr., Dkt. No. 72, at 134:13-25.) Victim-1 also identified herself as the girl depicted nude, and without a thigh tattoo, in the second set of photos, Exhibits 1204-1207, which formed the basis for Count Five. (Id. at 139:11-16, 143:13-20.) At trial, Kidd testified in his own defense and confirmed that Exhibit 1204, and possibly Exhibit 1207, was a photo he had taken of Victim-1. (Trial Tr., Dkt. No. 76, at 718:5-10, 718:18-719:3.)

After a six-day trial, the jury convicted Kidd on Counts One and Five. At trial, Kidd was represented by counsel appointed under the Criminal Justice Act, but following trial, he requested new counsel to represent him at sentencing and beyond. On July 26, 2019, current defense counsel was

---

[1] The Court notes that Exhibit 1207 is a video rather than a photo exhibit. The distinction is immaterial for purposes of this Motion, and no further reference to its format will be made.

appointed, also under the Criminal Justice Act. (See Minute Entry dated July 26, 2019; Dkt. No. 84.)

At a hearing before the Court on October 11, 2019, defense counsel renewed a motion seeking to vacate the judgment under Rule 29 for improper venue. (See Dkt. No. 96.) The Court denied the motion at the hearing, concluding that "there is sufficient evidence on the record from which a reasonable jury could make a legal finding that venue was established." (Id. at 22:8-18.)

Kidd now argues that he is entitled to a new trial under Rule 33 because (1) the Government violated Brady v. Maryland, 373 U.S. 83 (1963) when it failed to disclose the fact that in the first set of photos, Victim-1 has a thigh tattoo, and in the second set, she does not; and (2) Kidd received ineffective assistance of counsel when his attorney did not notice and make use of this discrepancy at trial. Kidd further argues that the Court should excuse his delay in filing the present Motion because it resulted from the timing of defense counsel's appointment, as well as, in part, the COVID-19 pandemic.

The Government argues that Kidd's delay in bringing this Motion cannot be excused. The delay would prejudice the Government because young and "traumatized" victims testified at the first trial and would be reluctant and possibly

3

unwilling to testify again. (Opposition at 14.) Moreover, the two-year length of the delay would make a second trial less reliable given that memories fade, and defense counsel has proffered an "inadequate" justification for the delay. (Id. at 15.) Lastly, the Government points out that defense counsel could have sought an extension to file post-trial motions after being assigned to the matter, but did not. Regarding Kidd's Brady challenge, the Government contends that it disclosed the photos in question "as soon as they became available," "highlighted them by marking and introducing them at trial, and had no affirmative obligation to identify a 'discrepancy'" among them. (Id. at 16.) The ineffective-assistance-of-counsel claim is meritless, according to the Government, because trial counsel's defense was vigorous, and any error did not prejudice Kidd given the "overwhelming" evidence against him. (Id. at 21.)

In his Reply, Kidd argues that the availability of other witnesses going forward is irrelevant, and only the availability of Victim-1 matters. Further, if not resolved at this stage, Kidd will have to raise his arguments in a petition under 28 U.S.C. § 2255, thus creating more, rather than less, delay. Regarding the Brady claim, Kidd argues that the Government intentionally hid the identity of Victim-1 as long as possible to prevent the defense from discovering the

4

discrepancy in the photos. Kidd disputes the Government's position on the ineffective-assistance-of-counsel claim that the evidence was otherwise overwhelming, pointing out that Victim-1's testimony was "substantially undermined in many respects." (Reply at 6.) If the Court is inclined to deny the Motion, Kidd requests an evidentiary hearing at the least "to get to the bottom of the tattoo discrepancy." (Id. at 2.)

## II. LEGAL STANDARD

Under Rule 33, the Court may, in its discretion, "grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). It is the defendant's burden to prove entitlement to a new trial under this Rule. United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (citations omitted). A "manifest injustice" arises when "something has occurred to interfere with the defendant's right to a fair trial." United States v. Yannai, 791 F.3d 226, 242 (2d Cir. 2015). Ultimately, a court's discretion to grant a new trial under Rule 33 "should be exercised sparingly" and only "in the most extraordinary circumstances." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (citations omitted).

A Rule 33 motion "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). The Court may excuse a filing delay "if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). In assessing a claim of "excusable neglect," courts consider:

> (1) the risk of prejudice to the government; (2) the length of the delay and the impact on the proceedings; (3) the reason for the delay and whether it was within the defendant's control; and (4) the defendant's good faith or lack thereof in asking for an extension.

United States v. Ketabchi, No. 17 CR 243, 2019 WL 1510444, at *2 (S.D.N.Y. Mar. 25, 2019), appeal dismissed sub nom. United States v. Sinclair, No. 19-1079, 2020 WL 6146339 (2d Cir. June 8, 2020) (citations omitted).

### III. DISCUSSION

The Court is unpersuaded that Kidd's delay in filing the instant Motion resulted from "excusable neglect." Kidd's guilty verdict was returned on July 15, 2019. Time to file the instant Motion expired on July 29, 2019 -- yet it was filed nearly two years later, on May 19, 2021. The length of this delay is significant. See, e.g., United States v. Jiau, 644 F. App'x 92, 93 (2d Cir. 2016) (affirming the district court's conclusion that the Rule 33 motion filed "eleven months after the verdict" was untimely); United States v.

DiPietro, 278 F. App'x 60, 61 (2d Cir. 2008) (concluding that the district court did not abuse its discretion by finding that a Rule 33 motion "filed nearly ten months after judgment" was untimely); United States v. Urena, No. S305 CR 0760, 2008 WL 2229847, at *2 (S.D.N.Y. May 29, 2008) (concluding that excusable neglect had not been established and finding that the delay of eight months was "substantial").

Likewise, the delay would result in considerable risk of prejudice to the Government were it required to retry this case two years later. "As time goes by, the likelihood of trial witnesses becoming unavailable increases." United States v. Sabir, 628 F. Supp. 2d 414, 417 (S.D.N.Y. 2007), aff'd in part sub nom. United States v. Farhane, 634 F.3d 127 (2d Cir. 2011). The Court is persuaded that this risk is even greater in this case, considering the youth of the trial witnesses and the sensitive nature of their testimony. The Court further acknowledges that the Government "has a significant interest in the finality of the verdict and in getting [the defendant] sentenced." Id.

Nor has defense counsel provided a justifiable reason for the delay. While the COVID-19 pandemic has undeniably impeded lawyers' ability to perform their duties in a timely manner for reasons outside their control, a full nine months of inaction had elapsed *before* the pandemic could have caused

any delay in filing this Motion. Defense counsel's justification for that period of delay is that his focus after being appointed was "on the Rule 29 motion concerning venue . . . and on sentencing issues." (Motion at 10.) But the Court is unpersuaded that defense counsel's focus -- and his resulting inattention to the issues raised herein -- is a sufficient basis to excuse the lengthy delay. "[M]issed filing deadlines cannot be erased any time a defendant chooses to have new counsel." Ketabchi, 2019 WL 1510444, at *3. Moreover, while defense counsel argues that he did not "see a need to examine" the trial exhibits (Motion at 10), this claim is undermined by his argument on the Rule 29 motion itself, which made repeated reference to certain photo evidence (see, e.g., Dkt. No. 96 at 4:1-10, 7:13-21, 17:24-18:8). And even if the Court excused defense counsel's delay while preparing for argument on the Rule 29 motion, five months remained during which counsel was admittedly "in possession of the Exhibits binder" (Motion at 10), when he could have identified the alleged discrepancy and brought the present Motion.[2] See Endicott Johnson Corp. v. Liberty Mut. Ins. Co., 116 F.3d 53, 57 (2d Cir. 1997) ("In the absence of

---

[2] The Court is likewise unpersuaded that this five-month period could reasonably have been consumed by sentencing preparation. Even if it were, this is not a sufficient basis to find excusable neglect. See United States v. Cates, 716 F.3d 445, 449 (7th Cir. 2013) ("[N]eglect due to a busy schedule is generally not excusable.").

8

exceptional circumstances, each party is responsible for knowing the pertinent procedural rules and principles and for taking such steps as are needed to protect its own interests.").

The Court makes no finding as to defense counsel's good or bad faith in seeking an extension to file the present Motion. Nevertheless, as set forth above, the remaining factors weigh in the Government's favor. Kidd has thus failed to establish "excusable neglect," and the Court denies this Motion as untimely.

Briefly, the Court notes that, even if an extension were granted, the Motion would fail on its merits. As to the alleged Brady violation, there is no dispute that the Government disclosed all the photos at issue before trial. Kidd argues that it is the discrepancy between those photos that "constituted exculpatory evidence that should have been disclosed and identified by the government." (Motion at 17.) However, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). And, "as a general rule, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed

9

evidence." United States v. Ohle, No. S3 08 CR 1109, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), aff'd, 441 F. App'x 798 (2d Cir. 2011) ("Placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once."). Here, Kidd argues that the discrepancy between the photos was "very obvious." (Motion at 24.) Thus, trial counsel "should have known" about it. LeRoy, 687 F.2d at 618. Under these circumstances, the Government did not violate its Brady obligations by not pointing out the discrepancy between the photos to which defense counsel had access.

To the extent Kidd argues that the Government violated Brady by delaying disclosure of the photos and Victim-1's identity, the argument is unavailing. Before trial, and despite the Government's representations that it was "still waiting for the electronic content from certain seized devices," trial counsel insisted on proceeding to trial "immediately." (Dkt. No. 27 at 2:23-24, 8:1-10.) The short time period between the disclosures and trial was therefore not a delay tactic on the Government's part, but rather a strategic decision on the part of trial counsel to avoid the unearthing of more incriminating evidence. (Id. at 9:13-15 ("I would rather move forward to trial with the witness

testimony and not risk that there is some corroboration."); see also Dkt. No. 66 at 16:9-10 ("The client still wants to press on to trial despite us not having looked at that."); id. at 16:10-12 ("Given all of the circumstances, I made a reasoned and professional judgment that's a reasonable strategy to do that.").) Moreover, the Government was not required to disclose the photos or the identity of the victims immediately upon request. Rather, "as long as a defendant possesses Brady evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." United States v. Coppa, 267 F.3d 132, 144 (2d Cir. 2001). Kidd -- who carries the burden on this Motion -- has not established that the short time he had to review the discovery at issue undermined its effective use, or that speedier disclosure would have changed the outcome of his trial. Id. ("There is no Brady violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial.").

The Court is likewise unpersuaded by Kidd's ineffective-assistance-of-counsel claim. To prevail on such a claim, a movant must establish "that counsel's representation was unreasonable" and "that, but for counsel's incompetence, there is a reasonable probability that 'the result of the

proceeding would have been different.'" United States v. Accolla, 253 F. App'x 154, 154–55 (2d Cir. 2007) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)).

Here, Kidd has not established that "that the deficient performance prejudiced the defense." United States v. Poitevien, 269 F. App'x 15, 16 (2d Cir. 2008) (quoting Strickland, 466 U.S. at 668). Both Kidd and Victim-1 testified that Victim-1 was the girl depicted in the second set of photos. Additionally, other trial testimony established that Kidd had previously proposed concealing victim identities with fake tattoos. (See Trial Tr., Dkt. No. 74, at 543:3-6 ("Q: What, if anything, did [the defendant] say about concealing your identity in those photographs? A: He could blur your face up. If you don't have anything, tattoo or something, he could create one.")) In light of this testimony, the Court does not find a reasonable probability that "the result of the proceeding would have been different" had trial counsel identified the alleged discrepancy and made use of it to attack Victim-1's credibility or undermine the Government's case. See Strickland, 466 U.S. at 688, 694. As defense counsel acknowledges, the appearance of a tattoo in one set of photos and not another does not categorically establish that the photos were not of the same person. (See Motion at 17.) And even if the jury had discounted Victim-

1's testimony because of the discrepancy, Kidd himself identified the person depicted in the second set of photos as Victim-1, providing an independent basis upon which the jury could have concluded that the person in the photos was Victim-1. Thus, Kidd fails to establish an ineffective-assistance-of-counsel claim.

For substantially the same reasons, Kidd's request for an evidentiary hearing is denied. The Motion is untimely, and fails on the merits. No further evidence is required. See Johnson v. United States, 119 F. App'x 319, 321 (2d Cir. 2005) ("[C]ourts have discretion to determine whether to grant a full evidentiary hearing."); United States v. Ghavami, 23 F. Supp. 3d 148, 157 (S.D.N.Y. 2014), aff'd sub nom. United States v. Heinz, 607 F. App'x 53 (2d Cir. 2015) ("Whether to hold an evidentiary hearing before deciding a motion for a new trial rests within the district court's discretion." (citation omitted).

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED**, that defendant Lloyd Kidd's motion for a new trial (Dkt. No. 110) is DENIED.

**SO ORDERED.**

Dated: New York, New York
13 July 2021

_____
Victor Marrero
U.S.D.J.

13