M1SAAKIDS                        Sentence

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          18 CR 872 (VM)

5   LLOYD KIDD,

6              Defendant.

7   ------------------------------x

8                                    New York, N.Y.
                                     January 28, 2022
9                                    1:30 p.m.

10
    Before:
11
                       HON. VICTOR MARRERO,
12
                                     District Judge
13

14                       APPEARANCES

15  DAMIEN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    ELEANOR TARLOW
17  JACOB GUTWILLIG
         Assistant United States Attorney
18
    FLORIAN MIEDEL
19       Attorney for Defendant Kidd

20

21

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

M1SAAKIDS                     Sentence

1          (Case called)

2          THE COURT:  Good afternoon.  Thank you and be seated.

3          This is a proceeding in the matter of United States v.

4     Kidd.  It is docket number 18 CR 872.

5          Counsel, please, enter your appearance for the record.

6          MS. TARLOW:  Good afternoon, your Honor.

7          Eleanor Tarlow, for the government.  I am joined at

8     counsel table by my colleague, Jacob Gutwillig.

9          MR. MIEDEL:  Good afternoon.

10         Florian Miedel, for Mr. Kidd.  Also at counsel table

11    is my paralegal.

12         THE COURT:  Thank you.

13         The Court notes for the record that the defendant is

14    present in the courtroom seated next to his attorney.

15         The Court's scheduled this proceeding as the

16    sentencing of the defendant in this matter.  I have read and

17    reviewed the revised presentence investigation report dated

18    August 27, 2021, which was prepared in connection with today's

19    sentencing of Mr. Kidd.  I have also read the submissions from

20    the defense counsel dated January 14, 2022, including the

21    attached exhibits, along with the government's submission dated

22    January 21, 2022, including the victim impact statement and

23    defense counsel's reply dated January 25, 2022.

24         I will note that the Court has received today another

25    victim impact statement from a Dana McLloyd.  The Court has

M1SAAKIDS                    Sentence

1   reviewed this as well and ask the government whether they have
2   received a copy and reviewed the letter.
3             MS. TARLOW:  Yes, your Honor.
4             THE COURT:  Ms. Tarlow, does the government have any
5   objections to the presentence report?
6             MS. TARLOW:  No, your Honor.
7             THE COURT:  Mr. Miedel, have you had an opportunity to
8   discuss the presentence report with Mr. Kidd?
9             MR. MIEDEL:  Yes, I have.
10            THE COURT:  Do you have any objections to the report
11  to raise at this point?
12            MR. MIEDEL:  Not really, your Honor.  Paragraph 46 of
13  the presentence report concerns, discusses an arrest which
14  seems to be the same arrest that led, that was the federal
15  arrest here but it's in state court and involves other charges.
16  Mr. Kidd was never arraigned on those charges.  He was never
17  brought to Kings County courthouse.  I'm not sure why that's in
18  the report, but beyond that we don't have any objection.
19            THE COURT:  All right.  The Court notes the statement
20  made by defense counsel on this issue.
21            Mr. Kidd, please, rise.  Have you read and reviewed
22  the presentence report?
23            THE DEFENDANT:  Yes, sir.
24            THE COURT:  Did you have an opportunity to discuss it
25  with your attorney?

M1SAAKIDS                    Sentence

 1            THE DEFENDANT:  Yes, sir.

 2            THE COURT:  Thank you.  You may be seated.

 3            On July 15, 2019, after a jury trial, Mr. Kidd was

 4    found guilty of one count of sex trafficking a minor in

 5    violation of 18 U.S.C. Sections 1591 (A) and (B) (2).

 6            Mr. Kidd was also found guilty of one count of

 7    inducing a minor to engage in sexually explicit conduct in

 8    violation of 18 U.S.C. Sections 2251 (A) and (E).

 9            Ms. Tarlow, does the government have any additional

10    comments in connection with sentencing at this time?

11            MS. TARLOW:  Yes, your Honor.

12            As your Honor just noted, the Court presided over a

13    week-long trial, during which multiple victims came into this

14    courtroom and they bravely took the stand.  Those victims

15    described how the defendant recruited them for prostitution,

16    profited off of selling their bodies for sex and then took

17    those proceeds.  The minor victims didn't have permanent homes

18    or families who they could turn to.  They wanted love.  They

19    wanted attention.  They wanted a place to stay and they wanted

20    to make money.  The defendant took advantage of that.  He sold

21    their bodies and he profited off of them.  The victims

22    described on the stand the trauma that they went through.  They

23    were visibly shaken, as your Honor may recall.  They were

24    credible and they were persuasive.  They clearly did not want

25    to be here.

1       The defendant, for his part, he also took the stand at

2   trial.  He repeatedly lied about his conduct.  He lied that he

3   did not know two of the victims who testified.  He lied about

4   when he met and started prostituting the victim in connection

5   with counts he was convicted, the two counts he was convicted

6   of.  He lied about taking sexually explicit photographs and

7   videos of her when she was a minor.

8       That is why even setting aside any acquitted conduct,

9   the defendant must serve a serious sentence.  The trauma

10  inflicted on the victims because he altered their lives forever

11  and because he continues to demonstrate a serious lack of

12  remorse, a significant sentence is necessary to ensure it does

13  not happen again.

14      The seriousness of the offense cannot be overstated in

15  this case.  The prostitution of women was his livelihood.  It's

16  how he made his money.  He admitted on the stand that he

17  prostituted anywhere from 50 to 70 women -- that's over a

18  period of years -- and that his conduct only stopped as a

19  result of this arrest.

20      Those women, as I said, included some of the most

21  vulnerable members of society, victims who didn't have families

22  and he exploited their vulnerabilities.  He is convicted of

23  exploiting one victim beginning when she was 16 years old and

24  living in a group home.  That's Kaira.  He sold her for

25  commercial sex for years from around 2016 until 2017.  He gave

her explicit rules and instructions.  He told her she had to

get the money from the customers before she started her day at

commercial sex act and then she had to hand that money back

over to him.  Kaira testified credibly that on one occasion,

she did not do it and he grabbed her by the neck.  She

testified that he made her see customers day and night,

whenever they called.  He had her take lewd photographs with

her genitalia visible, and he posted them online.  That was all

when she was a minor.

His conduct was not just related to Kaira.  Your Honor

saw two other victims who bravely came in here.  They testified

about how the defendant sold them for sex when they were

minors.  They described that they went together to the

defendant's house in around May 2018, along with two other

minor victims who were identified as Jessica and Ariel.  He

took lewd photographs of them and posted them online for

advertisements.  Then he marched them in one-by-one into his

bedroom where he had sex with them.

Sabrina, who is one of the victims, testified that the

defendant told her she had to have sex with him before she

could see customers because, quote, "Not every girl's vagina

qualifies for the job."  Sabrina was 16 years old.  She and the

other minor girls who went to his house on that date were

coming from a group home.  They were vulnerable members of our

society who the defendant capitalized on.

1          The defense argues, particularly in the reply, that

2     the Court should disregard Sabrina and Aisha's testimony, that

3     they were not victims charged in the indictment.  They were not

4     credible.  They don't need to be named victims in the

5     indictment of course for your Honor to consider their testimony

6     as relevant conduct.  And they were credible.

7          The defendant argues that they couldn't remember

8     certain minor details like the location of the defendant's

9     apartment.  That is understandable given their age and given

10    when it occurred.  The Court bore witness to their statements

11    and that they were credible on the material points.

12         Aisha identified in court the defendant as the

13    individual who trafficked her and Sabrina.  Sabrina didn't

14    identify him in court but she did identify a photograph of him.

15    She testified that he had braids when she knew him and in fact

16    the photograph that she identified him in had braids where as

17    at trial he did not have braids.

18         Sabrina and Aishas' accounts corroborated each other

19    and they corroborated Kaira's testimony.  They all testified

20    about a certain pattern of conduct.  They were instructed by

21    the defendant to pose for photographs soon after they arrived.

22    They were posted on "Backpage" by the defendant.  They were

23    made to have sex with the defendant before being sold to other

24    customers and they were instructed by him to use certain

25    locations in his home to receive the customers.

1          Sabrina and Aishas' testimony about the events is

2     corroborated by other evidence in this case.  Aisha identified

3     herself in photographs that were posted in advertisements by

4     the defendants's account on "Backpage" which is a website where

5     advertisements for commercial sex are listed.  Aisha and

6     Sabrina testified that the same day that those postings were

7     put on "Backpage", May 18, 2017, they left the defendant's

8     house together and went to Target.  At trial, as your Honor

9     recalls, there was video shown of them at Target on that same

10    date, May 18, 2017.

11         The defendant's conduct is disturbing not only because

12    of who he prostituted, those minor victims, among many others,

13    but also because of how he went about doing it, the coercive

14    hostile environment that he created.

15         The defendant argues that the jury rejected the

16    government's argument that any violence was used because the

17    jury did not find that he trafficked, the forced violence

18    and -- Dana or Ariel.  You can't speculate on what informed the

19    jury's decision.  There was significant testimony about the

20    force, violence and manipulation that he used.  Three witnesses

21    testified about his use of force and coerciveness and they were

22    consistent with one another, including that he choked Kaira,

23    that he created a hostile environment and this he kept money

24    out of their reach.

25         But even setting aside that testimony, the Court can

look just at the defendant's own admissions to demonstrate that

he created that kind of environment.  The defendant testified

that he wanted control over his house.  He said, "I feel like

what I say should stand for something".  He testified that he

told the women who worked for him that they need to be

submissive under his control.  He talked about the rules that

he set for his house, the girls could only have sex in certain

locations, they had to collect money before they actually

engaged in sex acts with a client, they had to take the money

and give it to the defendant, and then he would store the money

out of their reach where they couldn't access it in a safe in

his bedroom.

        He talked about how he reported everything that went

on in his apartment, including when women were having sex with

customers.  He had access to the live recording on his phone.

He kept tabs on them.  The defendant's conduct is made all the

more egregious because as he testified at trial, and he lied

over and over again under oath.  He denied knowing Kaira before

April 2017.  He denied taking any photographs or video of her

before April 17.  But Kaira's testimony was credible and was

consistent on that point that she had met him many years

earlier in 2015.

        The defendant's statement contradicts the statement in

this case.  We produced photographs and videos, which were

stamped on February 2017 when Kaira was still a minor.  Indeed,

1    the jury could not have convicted the defendant of the

2    inducement of sexually explicit photographs if they had

3    believed him that he had not met Kaira until after she was an

4    adult.

5            Regardless, there are many other examples of perjury

6    at trial.  He testified that the government had altered the

7    data on photographs and videos.  He altered the dates that were

8    listed, that it was a government conspiracy.  He testified that

9    he had never seen Aisha or Sabrina before in his life.  That

10   was contradicted by their testimony.  It was also contradicted

11   by the advertisements of Aishas that were posted on his own

12   account on "Backpage".  His testimony under oath is important

13   to the Court because it demonstrates a lack of remorse, a lack

14   of acknowledgment of his actions and is an appropriate

15   enhancement of obstruction of justice in this case.

16           Finally, a top of the guidelines sentence would be in

17   line with similar cases.  Defense counsel has pointed to United

18   States v. DuPigney and United States v. Benjamin and tried to

19   argue that this case is not analogous, that the conduct is not

20   on par, that the government's outline and sentencing submission

21   with respect to Mr. DuPigney is the most analogous case in this

22   court.  Every defendant is different, that there are

23   similarities between those cases.  DuPigney's case did involve

24   the degree and consistency of violence.  It was more severe

25   and -- but there were fewer individuals in that case who

M1SAAKIDS                    Sentence

1    engaged in prostitution.  He did not run a brothel for his own

2    livelihood and there were fewer minor victims who had sex on

3    his behalf.  DuPigney received a sentence of 300 months.

4            With respect to Mr. Benjamin who received 204 months,

5    the time period in which Benjamin's offense conduct occurred

6    was far more limited as a matter of a few weeks.  He was only a

7    teenager when he engaged in that conduct.  There were also

8    fewer victims.  And he never testified, as the defendant did,

9    in this case.

10           So, your Honor, a sentence at the top of the

11   guidelines is appropriate in this case to account for the

12   egregious nature of the defendant's conduct, his exploitation

13   of women and vulnerable -- for his financial gain or his lack

14   of absolute remorse.

15           THE COURT:  Thank you.

16           Mr. Miedel, do you have any additional comments at

17   this time?

18           MR. MIEDEL:  Yes, your Honor.  Thank you.

19           Your Honor, you sat through this trial.  You have read

20   our post trial motions.  I've submitted an extensive sentencing

21   memo and then a reply to the government's sentencing

22   submission.  There's little I can say here today that I haven't

23   already said.  I know that you've read all these submissions

24   carefully.  So, please, forgive me if I repeat myself.  I'm

25   going to try to keep that to a minimum, but I do want to

M1SAAKIDS                          Sentence

1    reiterate what I consider to be so important here.

2              Lloyd Kidd was acquitted of trafficking more than one

3    minor.  He was acquitted of engaging in violent behavior or

4    threats of force.  I have been racking my brain, your Honor,

5    how in the absence of those aggravating facts does he deserve

6    more than 15 years in prison.

7              The government asks you to sentence him to 293 months.

8    That's almost 25 years.  As you can see from its memo and from

9    the comparisons that they want you to draw to other violent sex

10   traffickers of multiple minors, that request is based on

11   accusations, allegations that I'm sure the government believes

12   are true but that were rejected by the jury.

13             The use of acquitted conduct at sentencing has always

14   been controversial, your Honor.  Most state courts don't permit

15   it for good reason.  I know the burden of proof is different,

16   but how does a judge know better than the jury?  Why does the

17   judge get to disregard the jury's findings?  We don't know in

18   this case whether the jury acquitted because the evidence just

19   barely did not meet proof beyond a reasonable doubt or whether

20   they would have acquitted even if the standard was by a

21   preponderance.  We don't know.

22             But the use of acquitted conduct for sentencing is

23   even more problematic now than it has been before in the face

24   of the legislation that is pending in Congress right now.

25   Bipartisan legislation that is sponsored that is described as

1   correcting an constitutional practice.  Doing it now in the

2   face of that law and doing it when there is no corroborative

3   evidence, objective evidence to support the testimony of

4   witness testimony who are not found credible by the jury

5   undermines any sense of justice, your Honor, and therefore, I

6   urge you and plead with you not to do it.

7        And if you don't consider acquitted conduct, that

8   leaves the count of conviction.  So, let met me just address

9   that for a moment.  There is no question that the conduct of

10  which Mr. Kidd was convicted is in and of itself serious.  The

11  prostitution business is an ugly business and is certainly

12  almost never -- the benefit of women.  And of course, it is

13  made much worse as the jury found here, one of those women is

14  in fact a girl, a minor.  That's why Mr. Kidd is not getting a

15  slap on the wrist.  He's not getting one year or five years or

16  even ten years.  He's getting at least 15 years.  That is a

17  tremendous amount of time.  We all agree that this is not a

18  victimless crime.  These are women and girls who end up in this

19  best including Kaira Brown often feel like they have no choice,

20  are pushed in by dire circumstances, drug abuse, neglect, fall

21  victim to holder or more powerful men.  That said, that does

22  not really set them apart from the teenage boys who are driven

23  to gangs or robberies or drug dealing because of their dire

24  circumstances because they have been lured by older and more

25  powerful men, but boys who, nevertheless, are held

M1SAAKIDS                    Sentence

responsibilities for their actions.  So, it's not a victimless

crime.  So we also cannot pretend that Kaira Brown has no

agency here.  She came voluntarily.  She left voluntarily.  She

worked with other pimps.  Lloyd Kidd did not kidnap her from

some Mexican village and smuggle her across the border and put

her into a room or an apartment in Queens and prostitute her

day and night.  That's the kind of sex trafficking that I think

the statute was intended for.

Ultimately, your Honor, this is not about whether what

Mr. Kidd did or was found guilty of is wrong.  The jury already

decided that.  The question here is whether it warrants a

sentence of more than 15 years in prison, more than 15 years in

prison for a man convicted of benefiting from the prostitution

of one minor and taking naked picture of her shortly before her

18th about birthday.

Your Honor, I recently had not one but two murder

cases in that district involving defendants who had criminal

records who engaged in significant acts of violence and who

killed their victims in cold blood.  The government, this

office, agreed to pleas capping their sentences at 25 years,

the same amount that the government now wishes Mr. Lloyd Kidd

to serve.  It makes no sense to me.  How is murder in the

prostitution business in any way comparable, especially when

brutal acts of violence, prior convictions to sex crimes like

they were in the -- case are not part of the equation here?

M1SAAKIDS                        Sentence

1          Your Honor, you may not like Lloyd Kidd.  You heard

2     him testify.  You'll hear his statement today and my guess is

3     that it will not change your opinion of him to the better.  But

4     Lloyd Kidd is a product of his background which we've explained

5     extensively in our letter.  He suffered a great deal.  He was

6     institutionalized at an early age.  He suffered from mental

7     illness and all of that goes to who he is.  And to that end, I

8     just want to acknowledge that Mr. Kidd's parents are in the

9     audience today.  But in the end, your Honor, the sentence has

10    to reflect what he was convicted of, not whether he is annoying

11    or aggravating or infuriating for the things that he said.

12         Your Honor, that sentence does not need to be and

13    should not be more than 15 years, especially, in light of these

14    absolute horrific conditions he has endured during his

15    incarceration and will continue to endure.  No human in society

16    should be subjected to the kinds of conditions that Mr. Kidd

17    and his fellow MDC inmates have been subjected to.  And to the

18    extent that you contemplate a sentence beyond 15 years, I urge

19    you to consider those conditions in determining that 15 years

20    is sufficient under 18 U.S.C. 3553(a).

21         Thank you.

22         THE COURT:  All right.  Thank you.

23         Mr. Kidd, please, rise.

24         Is there anything you would like to say on your own

25    behalf before the Court sentences you?

M1SAAKIDS                    Sentence

1          THE DEFENDANT:  Yes, sir.

2          Good afternoon.  If the system was fair my innocence

3     would be enough for me to be free.  But since it isn't, I stand

4     here waiting to be sentenced for crimes I did not and will not

5     ever commit.  Since my arrest, I've maintained my innocence and

6     there's strong evidence that was recently discovered which

7     supports this but apparent it means nothing.  Kaira Brown's

8     lies have ruined my life.  And the fact that she was able to

9     get away with them is a prime example of why most minorities

10    have little to no faith in the justice system or in my case,

11    the injustice system.

12          I'm a realist, so I believe in people suffering the

13    consequences of their actions.  But I also believe in the

14    punishment fitting the crime.  I know the Court isn't too

15    pleased with me going to trial, but all I did was exercise my

16    right to do so.  I was indicted and arrested on false

17    allegations even though there was no evidence against me,

18    except for uncorroborated hearsay.   I was also denied bail.

19    And during my incarceration, I suffered tremendously physically

20    and mentally, which play a big part in me asking for a speedy

21    trial.  The government has an issue with this because they

22    don't like people going to trial against them.  But what other

23    options did I have besides pleading guilty to something I

24    didn't do?  That's not justice.

25          At my trial, I admitted to the jury that my lifestyle

1   wasn't the most righteous but there are some things I would

2   never do, not just because of potential legal consequences but

3   because of my moral boundaries.  I was never a pimp because I

4   didn't have the desire or the lack of conscience necessary to

5   be one.  I promoted prostitution as a side hustle to make ends

6   meet.  I never turned anyone out or forced them to be a

7   prostitute, and I certainly didn't deal with minors, only

8   consenting adults.

9          Unfortunately, the same can't be said for Kaira Brown,

10  who openly admitted to the police that she sex trafficked an

11  innocent 12-year-old girl.  Text messages between Kaira and a

12  detective prove that she was scared of going to jail.  So like

13  most people in her predicament, she took the easy way out and

14  lied to get herself out of trouble.  Lucky for her, this is the

15  right era for her to claim to be a victim to avoid prosecution.

16  This "Me Too Movement" and sex trafficking era is perfect for

17  women like Kaira who advocate for equal rights but never equal

18  punishment.  Kaira Brown sex trafficked a child and will never

19  do a day in jail because of her gender.

20         Nothing about her story has been consistent.  First,

21  she told the government she met me in 2014.  Then she said she

22  met me in 2015.  And then somehow right before trial, the

23  government's timeline focused on 2017.  She claimed to stay

24  with me throughout this whole time at an apartment I didn't

25  move into until April 1, 2016, and there ar official court

M1SAAKIDS                    Sentence

documents that prove this.  First she said she came to my

apartment from Canarsie, Brooklyn, from a man named Gary who

was taking most of her money, which is true except for the

timeline because we didn't meet until 2017, not 2014 or 2015.

At trial, she changed her story, saying we met while she was in

Manhattan, so the government would have proper grounds for

venue and be able to prosecute me in the Southern District of

New York, and Gary was never mentioned again.

But if Gary really did turn Kaira Brown into a

prostitute as a minor, then why wasn't he ever charged?  Based

on the ad I posted on Backpage, Kaira knew that my residence

was very close to Gary's, which is why she replied to the ad to

begin with and came over shortly after we spoke. That makes a

lot more sense than her lying and saying I sent her a text that

she didn't respond to until she got back to Manhattan.  Of

course, the jury didn't get to hear any of this either, since

the Court limited me on what I was allowed to say.

Because of protective orders, I wasn't allowed to view

or possess most of my 3500 material.  So I was unable to

properly defend myself or ask my lawyer to impeach her on most

of these contradictions.  But I have a feeling that wouldn't

have mattered anyway since the Court didn't allow Mr. Margulis

to impeach her on anything, even the fact that she perjured

herself when she lied about the age she said she told me when

we first met.  So, either way, the jury wouldn't have been able

1    to hear any of this, the same way the jury was unaware that

2    Kaira Brown sex trafficked a child and benefited financially by

3    claiming to be a victim of both sex trafficking and child

4    pornography which was even more incentive for her to lie.

5           I wasn't sure of the identity of the woman in the

6    video and photos in question because I wasn't allowed to see

7    them until trial.  So, all I had to go on was Mr. Margulis'

8    very vague descriptions.  My main concern was not perjuring

9    myself.  So when he told me the photos and video were her, I

10   took his word for it and argued that the dates had to be wrong

11   since I saw Kaira Brown's ID when we first met and she was 18

12   year old.

13          I recently found out that before trial, Mr. Margulis

14   saw the blatant discrepancies in those photos and photos that

15   showed her face when she was 18 and made a note of it, but

16   decided not to bring it to my attention.  I was being asked to

17   identify photos from two and a half years prior in reference to

18   a female I didn't know very well.  I met Kaira in 2017 and

19   stopped dealing with her in 2017 because of her confrontational

20   behavior and the fact that she is a sociopath and a

21   pathological liar.  This case proves how dishonest Kaira is

22   because she's told so many lies that if she wasn't on the

23   prosecution's side she would be facing multiple perjury

24   charges.  She painted a false picture that she tried to stop

25   dealing with me and I wouldn't allow it, but it was actually

M1SAAKIDS                          Sentence

1    the other way around.

2            After getting to know her, I asked her to leave my

3    residence and she later contacted me apologizing and asking me

4    to allow her to come back.  This happened several times too

5    many because I should have never allowed her back after the

6    first time and that's a mistake I will regret for the rest of

7    my life.  Her lies not only cost me my freedom, they almost

8    cost me my life in prison several times because when you're

9    facing charges of this nature, people automatically become

10   biased against you.

11           Even Officer Tova Noel lied and told a group of

12   inmates that I was a child molester which is whey they tried to

13   cut my throat while I was asleep.  There's proof of this.  I

14   complained on her several times and nobody did anything about

15   it.  So I wasn't surprised when months later she was indicted

16   in connection with Jeffrey Epstein's death.

17           Is there no help for the widow's son?

18           THE COURT:  Thank you.

19           In accordance with the decision by the United States

20   Supreme Court in United States v. Booker, while the United

21   States Sentencing Guidelines are not mandatory, this Court,

22   nonetheless, must consult those guidelines and take them into

23   account within sentencing.  Therefore, this Court has

24   considered the findings of facts stated in the presentence

25   investigation report, as well as the guidelines analysis and

M1SAAKIDS                        Sentence

the recommendations contained therein.  The Court has waived

this information along with the factors listed in 18 U.S.C.

Section 3553(a) in coming to a final sentencing decision in

this case.

          The Court adopts the factual recitation in the

presentence investigation reporting regarding the criminal

history category, the offense level and sentencing range and

therefore, the Court finds that under the guidelines Mr. Kidd's

offense level amounts to 36 and his criminal history category

falls into criminal category two.  The total guidelines range

imprisonment for the offense level in the criminal history

category is 210 to 262 months imprisonment.

          The Court has considered the request by the government

that the Court impose a 2.33 enhancement to the base offense

level, which the government indicates it believes is warranted.

          The Court has considered that request and denies it.

Although, the Court found that Mr. Kidd's testimony on the

stand was less than truthful.  Nonetheless, the Court does not

accept that the perjury enhancement is necessary at this point,

given the fact that even with such enhancement, the Court would

find the sentence at the upper range of the enhanced level

unwarranted.

          The Court also does not consider any acquitted conduct

in calculating the appropriate guidelines range or in imposing

the sentence.

M1SAAKIDS                    Sentence

1        Mr. Kidd was found guilty after a jury trial of one

2    count of sex trafficking of a minor and one count of inducing a

3    minor to engage in sexually explicit conduct.  The probation

4    office has recommended that the Court impose a sentence of 210

5    months per count, and those sentences to be served

6    concurrently.

7        Subsection (a) (1) of 18 U.S.C. 3553 requires that

8    courts take into consideration the nature and circumstances of

9    the offense and the history and characteristics of the

10    defendant.

11        Subsection (a) (2) of 18 U.S.C. Section 3553 (c)

12    requires that the Court consider the need for the sentence to

13    promote certain objectives of the criminal justice system,

14    namely, punishment and specific general deterrence and --

15    Pursuant to Section 3553(A) (6), the Court is also directed to

16    consider the need to avoid unwarranted sentencing disparities

17    of all defendants with similar records and similar offenses in

18    other cases, as well as in connection with the case at hand.

19        Mr. Kidd, please, rise.

20        Taking into account the nature and circumstances of

21    the offense and the history and characteristics of the

22    defendant and considering all of the factors listed in 18

23    U.S.C. Section 3553(a)., the Court finds that a sentence of 256

24    months is reasonable and appropriate, and that such a term is

25    sufficient but not greater than necessary to promote the proper

M1SAAKIDS                          Sentence

1    objectives of sentencing.

2              Upon your release from imprisonment you shall be

3    placed on supervised release for a term of five years.

4              I will not impose a fine because the Court has

5    determined that you do not have the ability to pay such a fine.

6    However, you are ordered to pay to the United States a special

7    assessment of $200 which shall be due immediately.

8              Mr. Kidd, have you reviewed the conditions for

9    supervised release set forth in pages 22 to 25 of the

10   presentence report?

11             THE DEFENDANT:  Yes, sir.

12             THE COURT:  Did you discuss that with your attorney?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  Did you understand those conditions?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  You must comply with the standard

17   conditions one through 16 of supervised release set forth at

18   pages 23 to 24 of the presentence report and mandatory

19   conditions set forth on page 22 of the presentence report.

20             In addition, Mr. Kidd, you shall obey the special

21   conditions set forth at pages 24 through 25 of the presentence

22   report.

23             Mr. Kidd, do you understand each of these conditions?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  You shall report to the nearest probation

M1SAAKIDS                          Sentence

1    office within 72 hours of release from custody and the Court

2    recommends that you be supervised by district of residence.

3              In imposing this sentence I have taken into account

4    Mr. Kidd's conditions of custody at the Bureau of Prisons

5    facility during the last almost three years and during the

6    worst of a pandemic.  The Court believes that those severe and

7    harsh conditions for that extended period of time warrant some

8    recognition in the sentence that the Court imposes.

9              The sentence as stated is imposed.

10             Mr. Kidd, to the extent that you have a right to

11   appeal your sentence and you're unable to pay the cost of an

12   appeal, you have the right to apply for leave to appeal in

13   forma pauperis, meaning, as a poor person.  If you make such a

14   request, the clerk of court must immediately prepare and file a

15   notice of appeal on your behalf.  Do you understand your right

16   to appeal as it may exist?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  Let me clarify for the record that the

19   Court sentence of 256 months is on each count to run

20   concurrently.

21             Are there any remaining counts or underlying

22   indictments that need to be dismissed?

23             MS. TARLOW:  The government moves to dismiss any open

24   count.

25             THE COURT:  Anything else from the defendant?

M1SAAKIDS                    Sentence

1            MR. MIEDEL:  Yes, your Honor.

2            As you are aware, it's been not easy to maintain

3    consistent contact with my client over the last couple years

4    because of the various lockdowns and restrictions on visits and

5    so on at the MDC.  I, at least in the foreseeable future, will

6    most likely be the attorney who handles Mr. Kidd's appeal, and

7    I would therefore, ask that you direct the Bureau of Prisons to

8    keep him at MDC where he is now during the pendency of appeal

9    so that I can have contact with him and I can discuss the case

10   with him at length.

11           As you might imagine, Mr. Kidd is very involved in his

12   defense and in his legal issues that he wishes to raise on

13   appeal and it would be important for me to be able to have

14   contact with him and therefore, I'd ask that you direct the

15   Bureau of Prisons to keep him here.

16           THE COURT:  Thank you.

17           Does the government have any views on that request?

18           MS. TARLOW:  No, your Honor.

19           THE COURT:  The Court will recommend.

20           Thank you.  Have a good day and a good weekend.

21           (Adjourned)

22

23

24

25